URIAH C. WHITLOCK et al., Respondents, *v.* JAMES HAY, Appellant.

The provision of the act to prevent the issuing of false receipts, etc., by warehousemen and others (sec. 6, chap. 326, Laws of 1858), providing that warehouse receipts not having the words non-negotiable thereon may be transferred by indorsement, imparts to a receipt so transferred negotiable qualities, so far as to protect the purchaser and lienor, irrespective of the validity of the transfers as between the immediate parties thereto, and a *bona fide* transfer to a purchaser vests the title to the property specified in the receipt in the latter, together with all remedies of the former owner against the warehousemen for a failure to make due delivery.

Where one having a contract for the sale of a specified quantity of grain or other property, to be paid for on delivery, accepts instead of delivery the transfer of a guaranteed warehouse receipt made negotiable under said act, the presumption is that he accepts it as a performance and satisfaction of the contract, and in the absence of proof to the contrary no action can be maintained by him against the vendor for a failure of the warehouseman to deliver.

(Argued October 1, 1874 ; decided October 6, 1874.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, reversing a judgment in favor of defendant entered upon the report of a referee, and granting a new trial.

This action was brought to recover for an alleged shortage upon the delivery of a quantity of grain purchased by plaintiffs of defendant.

On the 8th day of May, 1869, the defendant contracted to sell to the plaintiffs 12,569 bushels of oats, then supposed to be in Scott & Co.'s stores at the Atlantic dock, Brooklyn, for which he held their warehouse receipt, by which the quantity was guaranteed. By the terms of the sale, the plaintiffs were to have seven days within which to pay the price, and on payment the grain was to be delivered. On the 15th day of May, the defendant presented a bill for the oats, dated that day, received a check, and indorsed and delivered the

warehouse receipt. As a matter of fact, there was not on that day, or at the time of the making of the contract, viz., the 8th day of May, the quantity of oats called for by the receipt; 1,712$\frac{1}{3}\frac{3}{4}$ bushels having previously been sold and disposed of by the warehousemen. As soon as the deficiency was finally ascertained the plaintiffs sought the defendant and demanded payment for the shortage.

The referee found these facts, and also that, by the custom of merchants, the delivery to and acceptance by the plaintiffs of the warehouse receipt, accompanied by payment, was final as to quantity, so far as the defendant was concerned, and that reclamation was to be made on the warehousemen. He also found that the plaintiffs accepted the delivery of the receipt as a fulfillment of the defendant's contract.

Further facts appear in the opinion. The referee directed a dismissal of the complaint and judgment was perfected accordingly.

*John E. Burrill* for the appellant. The judgment was reversed by the General Term on questions of law only; and the only question here is, whether the referee's conclusion of law was sustained by the facts. (Code, § 268; *Wright* v. *Hunter*, 46 N. Y., 410; *Finch* v. *Parker*, 49 id., 1; *Matthews* v. *Cole*, id., 57; *Marco* v. *L. Ins. Co.*, 35 id., 664; *Baldwin* v. *Van Dusen*, 37 id., 487; *Peterson* v. *Rawson*, 34 id., 370; *Westerlo* v. *De Witt*, 36 id., 345.) No question as to the evidence of custom having been raised below plaintiffs are precluded from raising the question here. (*Mann* v. *Eckford's Exrs.*, 15 Wend., 510; *Doane* v. *Eddy*, 16 id., 525; *Ford* v. *Munroe*, 20 id., 211; *Thurman* v. *Cameron*, 24 id., 87.) The contract being executory it was plaintiffs' duty to examine the oats immediately on delivery as to quantity as well as quality, otherwise they were precluded from objecting. (*Reed* v. *Randall*, 29 N. Y., 359; *Weaver* v. *Wisner*, 51 Barb., 638.) The parties are presumed to have contracted in view of the custom proved as to delivery. (*Walls* v. *Bailey*, 49 N. Y., 468.) Proof of the custom was

proper. (*Stanton* v. *Small*, 3 Sandf., 230, 241; *W. F. Co.* v. *Marshall*, 37 Barb., 509; *McCready* v. *Wright*, 5 Duer, 571; *Jones* v. *Brodner*, 10 Barb., 199; *Rawles* v. *Deshler*, 28 How., 67; *Brower* v. *Peabody*, 13 N. Y., 121; *Sturtevant* v. *Orser*, 24 id., 538; *Dows* v. *Montgomery*, 5 Robt., 451.) A delivery in the usual and customary manner satisfied the contract. (*Culver* v. *Gibson*, 17 Wend., 305; *The Eddy*, 5 Wall., 495; *F. and M. Bk.* v. *C. T. Co.*, 16 Vt., 15; 18 id., 131; 23 id., 186; *Noble* v. *Kennaway*, 2 Doug., 510; *Ely* v. *N. H. S. Co.*, 53 Barb., 207.)

*W. Howard Wait* for the respondents. A custom to be binding must be of long duration, universal and not in derogation of the legal rights of the parties. (*Wilcox* v. *Wood*, 9 Wend., 364; *Markham* v. *Jaudon*, 41 N. Y., 235; *Burrel* v. *Dord*, 5 id., 95.) Plaintiffs, by accepting the oats delivered, did not waive their claim for deficiency. (*McKnight* v. *Devlin*, 52 N. Y., 412; *Kein* v. *Tapper*, id., 550; *Day* v. *Pool*, id., 416.) The contract was not for the purchase of the receipt but of the oats. The warehousemen were agents of defendant and he is liable for their acts. (*Cobb* v. *Dorez*, 10 N. Y., 335.)

GROVER, J. The principal if not the only question arises upon the exception of the plaintiffs to the finding by the referee, to the effect that the plaintiffs received from the defendant the warehouse receipt of Scott & Co., in satisfaction and fulfillment of their contract to deliver the oats. As the order of reversal by the General Term fails to state that it was made upon error of fact as well as of law, this court must assume that it was based upon the latter only. (Code, § 268.) It has been repeatedly held that a finding of a fact essential to sustain the judgment without any evidence sustaining it, was an error of law, which, if excepted to, might be corrected by this court. The question, therefore, is whether there was any evidence tending to prove the facts above found.

It is insisted by the counsel for the defendant that the proof of the usage among dealers in grain in the city sustains the finding. That proof shows that, by the course of business, when the vendor of grain delivers to the vendee a guaranteed warehouse receipt for the amount agreed to be sold and delivered, the purchaser receives the grain of the warehouseman, and in case of shortage, which usually occurs to some slight extent, makes reclamation therefor upon the warehouseman, who satisfies the same. But no usage, in case of his failure to make satisfaction, was proved, or evidence given on that point. Section 6 of Laws of 1858, page 532, provides that warehouse receipts given for goods, etc., stored or deposited with any warehouseman, etc., may be transferred by indorsement thereof, and that any person to whom the same may be so transferred shall be taken to be the owner of the goods, etc., therein specified, so far as to give validity to any pledge, lien or transfer created by such person; but that no property shall be delivered except upon surrender and cancellation of the original receipt, or the indorsement of such delivery thereon in case of partial delivery; and further, that receipts having the words " not negotiable " plainly written or stamped upon the face thereof shall be exempt from the provisions of the section. The intention of this section is clear. It is to make the receipts therein specified, not having the words " not negotiable " plainly written or stamped upon their face, transferable by indorsement and delivery, and to impart negotiable qualities thereto when so transferred, so far as to protect purchasers and lienors, irrespective of the validity of the transfer as between the immediate parties. It follows that a *bona fide* transfer, as specified in the section, with intent to transfer the title to the property specified in the receipt, vests the title to such property in the transferee, together with all remedies of the former owner against the warehouseman for a failure to make due delivery thereof. This accounts for the usage of purchasers making reclamations upon the warehouseman in case of shortage, when the receipt is guaranteed by him, as in the present case. The trans-

fer of the receipt confers upon the purchaser the legal right to do this, and to maintain an action against him, in his own name, in case of his failure to make satisfaction. When a purchaser who has a contract for the sale and delivery to him of a specified quantity of grain or other property, the price of which he is to pay upon delivery, accepts, instead of a delivery of the property, a guaranteed receipt of a warehouseman, made negotiable by the act of 1858, the presumption is that he accepts such receipt as a performance and satisfaction of the contract by the vendor. The proof given of the unqualified acceptance of the receipt by the plaintiffs, in the present case, was evidence justifying the finding of the referee that he did so accept it. The plaintiffs, by their contract, had the right to insist upon the delivery of the grain to them by the defendant. They also had a right to accept any substitute therefor that they chose. When, instead of a delivery of the grain, they accepted a transfer of the receipt, which at once vested in them the title of all the grain therein specified then remaining in the warehouse, and, further, a right of action in their own name against the warehouseman to recover satisfaction for any deficiency in the quantity, irrespective of the cause of such deficiency, the delivery and acceptance of the receipt must be regarded as substituted by the parties for a delivery of the grain. It is unnecessary to discuss any of the other points presented by the counsel for the appellant.

The order appealed from must be reversed, and judgment upon the report of the referee affirmed.

All concur, except Allen, J., not voting.

Order reversed and judgment accordingly.