### FIRST NAT. BANK v. DEAN *et al.*

*(Superior Court of New York City, Jury Term.* June, 1891.)

1. WAREHOUSE RECEIPTS—TRANSFER—BONA FIDE HOLDER.
   Under Laws N. Y. 1858, c. 326, making warehouse receipts negotiable by indorsement, and Pen. Code, § 629, forbidding the issue of receipts for goods not actually in store, a person to whom such receipts are indorsed as security for present and future advances becomes the owner of the goods, and entitled to their possession, without regard to the equities between the preceding holders.

2. SAME—ESTOPPEL.
   A recital in warehouse receipts that the goods, consisting of liquors, are stored in a free warehouse, whereas in fact they are in a bonded warehouse, and subject to a government tax, estops the warehouseman from claiming that they are subject to such tax, as against a *bona fide* transferee, who has thereby been induced to make advances to an amount exceeding their value; and, if the warehouseman require the transferee to pay the tax as a condition precedent to delivery, he is guilty of conversion.

3. CONFLICT OF LAWS—WAREHOUSE RECEIPTS.
   Where a warehouse receipt is issued in New York for goods stored there, and an action is brought against the warehouseman in the courts of that state, by a person to whom the receipt had been transferred in another state, the question as to whether such transferee is a *bona fide* holder is to be determined by the laws of New York.

Action by the first National Bank of Chicago against Robert J. Dean and others to recover for money loaned on warehouse receipts issued by the defend-

ants.  The receipts were originally issued to Marshall, Spellman & Co., and were by them transfered to the Meade Van Bokkelen Company, of Chicago, Ill., who transferred them to the plaintiff as security for present and future advances.   The value of the goods was assessed by the jury at $1,342.50, and both parties move for judgment on the verdict.

*Peckham & Tyler*, for plaintiff.    *Hatch & Warren*, for defendants.

McADAM, J.  Warehousemen are not only responsible for damages which arise by their tortious acts, but sometimes for losses occasioned by the innocent mistake of themselves or their servants.  Thus they are liable for making a delivery of goods to a person not entitled to receive them.  Story, Bailm. § 414; 2 Amer. & Eng. Enc. Law, pp. 888, 890.  Their business has increased with the evolution of trade and commerce, and their rights and liabilities are defined by custom and by statute, so that they are generally understood by business men.  They have for years issued warehouse receipts for goods stored with them, and the transfer thereof from one holder to another has been regarded as a symbolical delivery of the goods.  These receipts were not negotiable at common law, for the reason that "negotiability only exists in the case of absolute promises for the payment of money, a thing negotiable in itself, and which cannot be reclaimed by the true owner from any one who has received it *bona fide*, and in exchange for a valuable consideration.  But chattels personal are wholly unsusceptible of negotiation in themselves, and it was deemed manifestly inconsistent to give the documents which represent them a different character."  1 Smith, Lead. Cas. (Amer. Ed.,) 895, 896.  To facilitate the transfer of warehouse receipts, and to aid transactions on the faith thereof, a statute was passed making them negotiable by indorsement.  Laws 1858, c. 326, § 6.  This was designed to protect purchasers and pledgees, irrespective of the validity of the transfer as between the immediate parties.  *Whitlock* v. *Hay*, 58 N. Y. 484.  To further protect the public, warehousemen were forbidden to issue receipts or vouchers for goods not actually in store, and it is a penal offense to issue fictitious certificates. 1858, c. 326; Laws 1866, c. 440; Pen. Code, § 629.  Under these provisions, the plaintiff, by the transfer to it of the warehouse receipts as security for present and future advances, became the owner of the goods stored and entitled to their possession, without regard to the equities existing between the preceding holders.  A lender on collateral security is as much a purchaser for value as if he bought out and out.  *Roxborough* v. *Messick*, 6 Ohio St. 448; 2 Amer. Lead. Cas. (5th Ed.) 235.  The exigencies of trade called warehouse receipts into being.  They are substantially acknowledgments by public or private agents that they have received merchandise, from whom, or on whose account; and usage has made the possession of documents equivalent to the possession of the property itself.  Thus warrants or receipts are habitually issued for the merchandise deposited in the various warehouses; and, as it is expressly or tacitly agreed that the goods shall be surrendered if the warrant, vouched by the order or indorsement of the owner, is presented, a sale attended by the transfer of such an instrument is as effectual as if the property were handed over to the purchaser.  This is a mere extension of the rule that when actual delivery is impracticable a symbol may be substituted for the goods.   1 Smith, Lead. Cas. (8th Ed.) p. 1223.

The goods represented by the warehouse receipts in this instance consisted of brandy, on which a government tax was due, and, if the receipts had indicated that the goods were stored in a bonded warehouse, the plaintiff would have been chargeable with notice of the act of congress in regard to internal revenue, and it would have become part of the contract. . *Van Schoonhoven* v. *Curley*, 86 N. Y. 187.  The receipts, instead of stating that the brandy was stored in a bonded warehouse, contained a declaration that it was stored at 492 and 494 Greenwich street, New York city, and at the head of

the receipts is a further declaration that the warehouse 492 and 494 Greenwich street is a free warehouse,—a phrase which means a warehouse for the storage of goods not liable to or relieved from bonded duties.   The receipts were issued to Marshall, Spellman & Co., and were by them transferred to the Meade Van Bokkelen Company of Chicago, Ill., and that company, at Chicago, aforesaid, transferred them to the plaintiff, as security for present and future advances, and the plaintiff, upon receiving the transfers, made fresh advances exceeding the value of the property represented by the warehouse receipts.   The jury so found, and the evidence sufficiently sustains their finding.   The representation at the head of the receipts, that the goods were stored in a free warehouse, estops the defendants from claiming, as against the plaintiff, a *bona fide* transferee of the receipts, that the brandy was subject to a government tax, upon the familiar principle that where one of two innocent persons—that is, persons each guiltless of an intentional wrong—must suffer a loss, it must be borne by that one of them who, by his conduct, acts, or omissions, has rendered the injury possible.   2 Pom. Eq. Jur. § 803.   Equitable estoppel is the effect of the voluntary conduct of a party, whereby he is absolutely precluded, both at law and in equity, from asserting rights which might, perhaps, have otherwise existed, either of property, of contract, or of remedy, as against another person who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who, on his part, acquires some corresponding right, either of property, of contract, or of remedy.   Id. § 804.   To constitute such an estoppel the following elements are essential:   "(1) There must be conduct—acts, language, or silence—amounting to a representation or a concealment of material facts.   (2) These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him.   (3) The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel at the time when such conduct was done, and at the time when it was acted upon by him.   (4) The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon.   (5) The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it.   (6) He must, in fact, act upon it in such a manner as to change his position for the worse."   Id. § 805.   The acts of the defendants contain all the ingredients necessary for an estoppel, and the jury found against the defendants on all the facts required to make the estoppel effectual.   In a free warehouse the warehouseman is the sole custodian of the goods, and, when his charges are paid, the owner is entitled to them.   In a bonded warehouse the goods are in the joint custody of the proprietor thereof and a storekeeper assigned to it by the government, (Rev. St. U. S. § 3274,) and, in order to get the goods out, the owner must settle with both the warehouseman and the government. (For an interesting account of the origin and growth of the warehouse system in England and the United States, see 2 Kent, Comm., 11th Ed., 737.) The plaintiff could not, under the circumstances, be required by the defendants to pay the government tax as a condition precedent to the right of claiming the goods from the defendants, and the latter were guilty of conversion in imposing that as a condition to their delivery.

Counsel have discussed at length the question whether the Illinois or the New York rule is to govern in determining whether the plaintiff is a *bona fide* transferee of the receipts for value.   Under the Illinois rule, one who takes a negotiable instrument in good faith in payment, or as collateral security for the payment of an antecedent indebtedness, parts with such value as entitles him to all the rights of one who purchases a negotiable instrument for a present consideration, without notice of existing equities.   *Manning* v.

*McClure*, 36 Ill. 499; *Butters* v. *Haughwout*, 42 Ill. 18. The goods were stored in New York; the contract was made in that state, and was to be performed there; and the plaintiff is in the forum of that state seeking to enforce the obligation against the defendants who reside there, so that both the *lex loci* and *lex fori* unite in requiring the rights and obligations of the parties to be determined exclusively by the laws of this state. *Hallgarten* v. *Oldham*, 135 Mass. 1; *Guillander* v. *Howell*, 35 N. Y. 657; *Loftus* v. *Bank*, 133 Pa. St. 97;[1] *Keller* v. *Paine*, 107 N. Y. 83, 13 N. E. Rep. 635; *Warner* v. *Jaffray*, 96 N. Y. 248; *Dickinson* v. *Edwards*, 77 N. Y. 573; *Bank* v. *Low*, 81 N. Y 566. It cannot be that, if a negotiable obligation made in this state is there transferred for a precedent debt, the transferee is not a *bona fide* holder to shut out equities in favor of the maker, and yet, if the obligation is transferred in Illinois, to a resident of that state, our courts must ignore the rule adopted in this state, and follow that prevailing in Illinois, and shut out the equities. Any such doctrine would be an unjust discrimination in favor of non-residents against residents of our own state, inconsistent with every principle of comity or notion of uniform justice, and cannot prevail. As against the Meade Van Bokkelen Company, its obligation might, in a proper action, be determined by the laws of Illinois, because its indorsement (which is to an extent an independent contract) was made and delivered there, and it cannot object that its obligation is determined according to the law of the place where it was entered into. Story Confl. Laws, § 287*a; Weil* v. *Lange*, 6 Daly, 549; 2 Amer. & Eng. Enc. Law, pp. 329, 330. Under the finding of the jury, which is satisfactorily sustained by the evidence, the plaintiff became a *bona fide* owner of the warehouse receipts, under the laws of this state, as declared in *Coddington* v. *Bay*, 20 Johns. 636, and kindred cases, so that it is of little practical moment whether the Illinois or the New York rule is to control. The plaintiff became the owner and holder of the two receipts, and entitled to the possession of so much brandy stored in a free warehouse, with title unimpaired by equities existing between prior holders. The defendants, having refused to give up the brandy, are liable for the value thereof, as assessed by the jury,—$1,342.50,—with $98.50 interest thereon, making together $1,441, and for this amount the plaintiff is entitled to judgment.