[No. 3655.   Decided September 12, 1901.]

ROY & ROY, *Appellants,* v. D. A. GRIFFIN *et ux., Respondents.*

SALE —DELIVERY—WHAT CONSTITUTES—SHIPPING INSTRUCTIONS.

Where a purchaser of goods directs their shipment via a certain railway, and the goods are loaded on the cars of that railway at the shipping station on a connecting line, to be thence transported to the line over which the shipping instructions required shipment, according to a prior and continued course of dealing

between the parties, the act of the shipper in loading the cars and turning them over to the common carrier, which received and took charge of them, constituted a delivery and exonerated the shipper from liability for subsequent damage in the shipment.

Appeal from Superior Court, Whatcom County.—Hon. HIRAM E. HADLEY, Judge. Affirmed.

*Allen & Allen,* for appellants.

*Fairchild & Bruce,* for respondents.

PER CURIAM.—Action for damages for breach of shipping contract. Plaintiffs purchased lumber and shingles from the defendant, D. A. Griffin, under an agreement whereby plaintiffs agreed to buy shingles and defendant agreed to sell, and it was stipulated that, in consideration of plaintiffs' waiving personal inspection of the shipment, defendant guaranteed maximum weight, quantity to be as charged on invoice, and quality to conform to the established grading in every particular, and defendant agreed to pay expense of repacking broken bunches and extra freight paid for cars loaded to less than their minimum capacity, to brand all shingles with a stencil of plaintiffs, and that any loss sustained by failure in any of these respects, or by any error or negligence on the part of the defendant, should be paid by defendant. The terms of payment were ninety per cent. advance, less two per cent. discount, balance on return of expense bill. The shipping instructions were, "Bill from Roy & Roy to Roy & Roy, Shoreham, Minn. Notify W. L. Martin. Via C. P and Soo line." Under this agreement five cars were shipped. Defendant's mill, at which the shingles were manufactured, is situated on the Seattle & International Railway line at Hollingsworth, now Deming, in this state, a short distance south of Sumas, the nearest point on the Cana-

dian Pacific Railway, and the nearest shipping point to the mill. The Canadian Pacific Railway cars were on the railway line at Hollingsworth, and defendant loaded the five cars with shingles. It was shown that the shingles, of quantity, quality and weight, according to the specifications of the order, were loaded into the cars. The cars were taken by the conductor with the shipping directions, and, upon arrival at Sumas, bills of lading were made over the Canadian Pacific and Soo lines. Bills of lading were delivered to the plaintiffs, and a payment of ninety per cent made thereon. Upon arrival at destination the cars did not contain the number of shingles as billed, and for the deficiency the plaintiffs demand damages in the sum of $430.70. At the conclusion of the testimony before the jury the following appears of record:

"And now on this 12th day of September, 1899, the plaintiffs and defendants having each announced that their evidence was closed and attorney for the plaintiffs at this time states to the court, 'That if the defendant's contention of the law is correct as to a delivery, and that if under the contract and dealings of the parties the shingles in controversy were delivered to the plaintiffs at the time the same were taken possession of by the railroad company at Deming, such ruling will dispose of the case adversely to the plaintiffs.' "

Thereafter the court withdrew the cause from the consideration of the jury, and filed its findings of fact and conclusions of law, and entered judgment of dismissal against plaintiffs.

The vital finding of fact is that the defendant delivered the shingles to plaintiffs when the cars were loaded at Hollingsworth. Plaintiffs have excepted to this finding of fact. We have examined the record, and do not think we ought to disturb the finding. There had been a continued course of dealing between plaintiffs and defendant.

Similar orders for shingles had been frequently made before the one in controversy, and it was understood between the parties that the shipments of shingles were only made at Hollingsworth. The Seattle & International railway was a common carrier, and connecting with the Canadian Pacific railway at Sumas. It must be assumed that the shipping directions from plaintiffs requested such shipments from Hollingsworth by way of the Canadian Pacific railway and Soo lines to the point of destination, as had been the usual course of such shipments. But the finding that the shingles were delivered when the cars were loaded at Hollingsworth is decisive of the cause. It appears that whatever shortage in quantity of shingles was found when the consignment was received at the point of destination occurred after the cars were loaded by defendant at Hollingsworth. The shipping instructions were merely to load and ship by way of the Canadian Pacific and Soo lines.

"To constitute a delivery there must be a · change of possession from the shipper to the carrier, and the former must relinquish all custody and control of the property for the time being, leaving the exclusive possession to the carrier." 5 Am. & Eng. Enc. Law (2d ed.), 181; also, 187; 2 Rorer, Railroads, p. 1281; *Wheelhouse v. Parr,* 141 Mass. 593 (6 N. E. 787); *Krulder v. Ellison,* 47 N. Y. 36 (7 Am. Rep. 402).

It will be observed that the shipping instructions directed the defendant to load and ship. When, therefore, under the usual course of dealing between the parties, the defendant loaded and shipped the shingles upon the line of the common carrier which received and took charge thereof, defendant's contract was completed. Any liability thereafter for damage in the shipment must be imputed to the carrier, and not to the defendant.

The judgment is affirmed.