[No. 16277.    Department One.    March 14, 1921.]

ANDERSEN, MEYER & COMPANY, LIMITED, *Appellant,* v.
NORTHWEST TRADING COMPANY, LIMITED,
*Respondent.*[1]

SALES (34)—CONSTRUCTION—PLACE OF DELIVERY.  A preliminary
contract by cable and correspondence for the sale and export of
steel rails, "shipment per steamer during September-October" must
be considered as modified where the final contract entered into pro-
vided for shipment in September and October, omitting "by steamer",
and contained the further provision that the sale was "C. I. F.",
under which the seller fulfilled all obligations by delivery to a
carrier in the interior of the United States during September and
October, and forwarding bill of lading with policy of insurance, etc.

SAME (71)—PERFORMANCE OF CONTRACT—DELIVERY TO OR THROUGH
CARRIER.  A provision in a contract for the sale and export of steel
rails requiring shipment by steamer in September or October is
waived, when the buyer failed to make the banking arrangements
called for in the contract, and honored the drafts on receipt of the
bills of lading, insurance policy and invoices, without waiting to
determine whether shipment was to be made by steamer in September
and October.

Appeal from a judgment of the superior court for
King county, Frater, J., entered October 15, 1920, upon
findings in favor of the defendant, in an action on con-
tract, tried to the court on the merits.  Affirmed.

*Eugene C. Luccock,* for appellant.

*Bausman, Oldham, Bullitt & Eggerman,* for respond-
ent.

MACKINTOSH, J.—The respondent, a corporation with
an office in Seattle, engaged in the export of goods to
China, on May 2, 1917, cabled its branch office at Hong
Kong, quoting a price upon steel rails and accessories.
The offer contained these words: ''Shipment per
steamer during September-October.''  On May 3, the

[1]Reported in 196 Pac. 630.

branch office, after oral negotiations with the appellant, a corporation engaged in business in Hong Kong, cabled to respondent in Seattle that the branch office had sold to appellant sixteen miles of rails and accessories, "Shipment per steamer during September-October," "Confirmed credit will be telegraphed."

On the same day, in confirmation of the various conversations between the branch office and the appellant, the branch office wrote to the appellant confirming the sale, and enclosing a certified copy of the cables from and to Seattle. On the following day, the appellant wrote to the respondent at its Seattle office a letter setting out in full the items of the contract, the specifications and the tests which were to be made, the letter containing this phrase: "All this material is covered by your branch office telegrams to you . . . and your cable . . . giving price." Accompanying this letter, was a formal order which provided, under the heading of "Shipment", "August-September-October, 1917," and under the heading of "Payment," "Cash against shipping documents through confirmed bank credit . . .". In the body of the order appeared the words: "C. I. F. Hong Kong, including war risk."

The order was filled by shipment from Minnequa, Colorado, on September 13, 1917, a trans-Pacific export bill of lading being issued, which, along with the invoices and insurance policies, was presented to the International Banking Corporation, and upon their presentation, the respondent's drafts were paid. The arrangements made by the appellant with the International Banking Corporation did not conform to the contract between the parties by establishing a confirmed bank credit, the arrangement amounting only to a letter of credit with purchasing authority.

The shipments, in the usual course, would have arrived in San Francisco in time .for shipment by

steamer during September and October, but on account of the condition of trans-Pacific commerce, due to the war, the commandeering of bottoms by the government, the issuance of priorities, and the congestion due to insufficient facilities, the shipments did not go forward by water until some time in the spring of 1918. The appellant received the material and made no complaint as to its quantity, quality or price, but seeks in this action to recover damages for failure of the respondent to ship from San Francisco during September and October, 1917, and claims, as its damages thereby, the interest that was paid on the drafts from the date thereof until shipment was made.

The lower court found against the appellant, who claims that the court was in error for the reason that, under the contract, the respondent was required to make shipment of the material covered by the contract by steamer during the months of September and October, 1917, and that the respondent's obligation under its contract was not performed by delivering such material to a carrier by rail in the interior of the United States, and receiving and negotiating a through bill of lading or a combination rail and water bill of lading. It is the appellant's claim that the contract expressly called for shipment by steamer during September and October. It is true, the cables between the respondent and its branch office use this term in reference to the time and manner of shipment, and that the letter from the branch house to the appellant, as well as the letter accompanying the formal order from the appellant to the respondent, refer to these cables, but it will be noticed that the formal order itself in referring to shipment merely provides that shipment shall be in September and October, and that the order further contained the notation, ''C. I. F.''

It is the appellant's interpretation of these documents that the provision as to shipment by steamer in September and October is a provision embodied in the final arrangements between the parties, and it cites many cases to the effect that, where a contract has been negotiated by correspondence, all the correspondence should be taken into account in construing the contract. In the respondent's view of the case, the final order providing only for shipment in September and October, omitting the term "by steamer", with the further provision there that the sale was one "C. I. F.," there is no room for construing the contract to the effect that shipment was guaranteed from San Francisco by steamer at any definite time.

The omission of the words "by steamer" and the use of the letters "C. I. F." are two things which would seem to indicate that the parties had agreed to a variation from the terms of the preliminary negotiations in the correspondence. It might be that either one of these matters, standing alone, would not lead to this conclusion, but the two together would seem to produce this result. A "C. I. F." contract is known to all shippers, and, as the court said in *Smith Co. v. Moschalades,* 183 N. Y. Supp. 500:

"Under such contracts the seller fulfills all of his obligations by putting the cargo on board and forwarding to the purchaser a bill of lading and a policy of insurance of the kind then current and customarily issued in the trade, and if the goods had not been paid for in advance it was customary to present a draft for the purchase price, accompanied by the bill of lading and policy of insurance and a credit slip for the insurance and freight, if not actually paid for by the shipper, which documents were to be delivered to the purchaser on his paying the draft, and the insurance is for the protection of the purchaser, who assumes all risks after the goods have been placed on board; and

this constitutes a delivery by the seller under such a contract, and title thereupon passes to the buyer, even though it be stated in the contract that delivery was to be made at the point of destination. Citing *Thames & Mersey Marine Ins. Co. Ltd. v. United States,* 237 U. S. 19, 35 Sup. Ct. 496, 59 L. Ed. 821, Ann. Cas. 1915 D, 1087; *Mee v. McNider,* 39 Hun 345, affirmed 109 N. Y. 500, 17 N. E. 424; *G. Groom Ltd. v. Barber* (1915) 1 K. B. 316; *Arnold Karberg & Co. v. Blythe, Green, etc.* (1916) 1 K. B. 495; *Tregelles v. Sewell,* 7 H. & N. 576; *Ireland v. Livingston,* L. R. 5 H. L. 395; *Biddell Bros. v. E. Clemens Horst Co.* (1911) 1 K. B. 214; reversed. 1 K. B. 934, but trial court affirmed (1912) H. L. App. Cas. 19.''

The reference to this form of contract would seem to preclude the idea that the parties intended to hold the respondent liable for failure to make shipment by steamer in September or October.

For another reason we feel that appellant is not entitled to recover, and that is that it failed to make the banking arrangements called for in the contract, which failure was waived by the parties; and that, even if the contract should be construed as calling for shipment by steamer in September and October, that provision had been waived by the appellant when its bank received the bills of lading, insurance policies and invoices and honored the drafts against them without waiting to determine whether shipment was to be made by steamer in September and October. In the ordinary course of business dealing, this would have amounted to a transfer of title and to a waiver. Upon failure of the seller to ship according to the contract agreement, and independent of whether the sale was "C. I. F." or not, assuming the contract called for shipment by steamer during September and October, this method of handling the matter would have absolved the respondent from his obligation to ship strictly according

to the terms of the contract. *Roy v. Griffin*, 26 Wash. 106, 66 Pac. 120; *Collignon & Co. v. Hammond Milling Co.*, 68 Wash. 626, 123 Pac. 1083; *Whitlock v. Hay*, 58 N. Y. 484; *Lekas & Drivas v. Schwill & Co.*, 187 App. Div. 486, 175 N. Y. Supp. 707.

For the reason stated the judgment is affirmed.

PARKER, C. J., BRIDGES, FULLERTON, and HOLCOMB, JJ., concur.