[No. 16329. Department One. November 2, 1921.]

NORTHERN GRAIN WAREHOUSE COMPANY, *Appellant,* v. NORTHWEST TRADING COMPANY, *Respondent.*[1]

SALES (88)—OPERATION AND EFFECT—WHEN TITLE PASSES—DELIVERY TO CARRIER. A c.i.f. contract, although the term may be used in connection with the price of the commodities' sold, is one passing title to the buyer on delivery of the commodities to the carrier, and he cannot hold the seller liable for injuries to the goods in transit.

SAME (88)—SHIPPING DOCUMENTS—DELIVERY OF BILL OF LADING. Delivery of shipping documents and insurance policies covering a shipment of goods under a c.i.f. contract need not be made until a reasonable time after shipment, in order to complete the transaction.

SAME (88) — DELIVERY TO CARRIER — OWNERSHIP OF GOODS — PURCHASE AND RESALE BY VENDOR. The fact that a trading company is not the owner of goods at the time of sale, but fills the order by purchase in a foreign market, will not affect the question of the passing of title to the buyer from the trading company as of the date of delivery to the carrier.

Appeal from a judgment of the superior court for King county, Smith, J., entered July 15, 1920, upon findings in favor of the defendant, in an action on contract, tried to the court. Affirmed.

[1] Reported in 201 Pac. 903; 204 Pac. 202.

*Wright, Kelleher, Allen & Hilen* and *William H. Gorham,* for appellant.

*Piles & Halverstadt,* for respondent.

MACKINTOSH, J.—On December 10, 1917, the following contract was entered into between the appellant and respondent, whereby the appellant purchased from the respondent the goods therein described:

COMMODITY: Wheat Bags.
QUANTITY: 100,000.
QUALITY: Best Grade.
SHIPMENT: March/April, 1918, from Calcutta.
PRICE: $0.17 each c. i. f. Seattle.
TERMS: Sixty Days Sight Draft acceptance on presentation with documents attached.
MARKED: N. W. T. Seattle 3041/A
REMARKS: Sold through Chas. H. Lilly & Company.

At the time the contract was entered into, the respondent had purchased from Becker, Grey & Company of Calcutta, wheat bags sufficient to cover the amount of this contract, and had established credit in London sufficient to protect Becker, Grey & Company. In the spring of 1918, Becker, Grey & Company shipped the goods on board the ''Fuca Maru,'' consigning them to the ''Textile Alliance'' ''account Northwest Trading Company.'' On June 3, 1918, the goods arrived at Seattle, and on June 6 the respondent notified the appellant of the arrival and enclosed a guaranty approved by the ''Textile Alliance.'' On June 14 the respondent discovered part of the goods were damaged, but failed to notify the appellant of that fact. The respondent, on June 24th, not having the bill of lading, gave to the carrier an indemnity bond, and on June 26th procured from the carrier's warehouse an order made to itself which it endorsed to the appellant and attached the same to a draft which was presented by the respondent to the appellant, who ac-

cepted the draft and thereby obtained possession of
the warehouse order, and on the following day took
actual possession of the goods, when it learned of the
damaged condition of a portion of them.   On this
same day, June 27th, draft was received from Becker,
Grey & Company with the documents attached.   The
respondent obtained the documents and procured a re-
lease of the indemnity bond, which had been given to
procure the warehouse order, by delivery of the bill
of lading.   While the goods were in transit the appel-
lant, a couple of times, made inquiry of the respondent
as to "our 100 bales purchased from you," in reply to
which the respondent twice recognized the bags as be-
ing the property of the appellant.

The consignment of the goods by Becker, Grey &
Company to the "Textile Alliance" is explained by
the fact that, during the war times, the goods were
necessarily so consigned by reason of the President's
proclamation and order of the War Trade Board,
which required that goods of the character in ques-
tion be so consigned in order that the "Textile Alli-
ance" might approve of the sale and delivery of the
goods.   Owing to war conditions, the bill of lading did
not take the usual course, and it  was by reason of
those conditions that, in lieu of the bill of lading being
delivered to the appellant, the documents above re-
ferred to were used and the delivery made in the man-
ner described.   This course was pursued in order to
facilitate the physical delivery of the bags to the ap-
pellant.

The testimony shows insurance had been written
upon the bags under a blanket policy which was in ef-
fect during the months in which the goods were shipped
and were on the seas.

Somewhere on the voyage of the "Fuca Maru" the
goods were injured by sea water, and this action is

brought for the purpose of determining who shall bear the loss. The appellant is seeking damages because 27,000 of the 100,000 bags were delivered in damaged condition, its position being that the title had not passed at the time the damage occurred, while the position of the respondent is that, under the contract as above set forth, title had passed at the time of delivery to the carrier in Calcutta. The bare question in this case is as to the effect of that contract.

The respondent's contention is that this is a "c. i. f." contract, and that, in accordance with the established rule, under such a contract a delivery is complete when the goods have been actually delivered to the carrier for transportation; while the appellant claims that the use of the letters "c. i. f." in the contract refer only to the matter of price, and that title did not pass until delivery in Seattle, under the same restrictions as would be applied had those three letters not been used in the contract, and that in this case no title passed until either actual or constructive delivery of the goods by presenting the bill of lading with draft attached and the purchaser had accepted the draft and thereby obtained the bill of lading.

It is appellant's argument that this case is governed by what this court said in the case of *Collignon & Co. v. Hammond Milling Co.*, 68 Wash. 626, 123 Pac. 1083; and it quotes that part of the opinion which follows:

"There is nothing in a c.i.f. sale differentiating it from other sales, so far as the question under consideration is concerned. The distinguishing feature of such a sale is that the contract price includes the costs of insurance and the freight to destination in addition to the invoice cost of the goods. An offer and acceptance on that basis, therefore, does not, more than in other sales, determine as between buyer and seller when or where the title to the goods passes from buyer

to seller. That depends upon the intention of the parties to be determined as in other cases.''

The expression of this court in that case is, if read literally, not supported by the authorities and has, in fact, been overruled by our decision in *Andersen, Meyer & Co. v. Northwest Trading Co.*, 115 Wash. 37, 196 Pac. 630, where we had under consideration a "c.i.f." contract. In the *Collignon* case, *supra*, a "c.i.f." contract was considered without any reference to the English and American authorities which have passed upon this form of contract under the law merchant, and which have established, with scarcely a dissenting opinion anywhere, that a "c.i.f." contract, although the term may be used in connection with the price of the commodities, yet affects the title on delivery. These contracts being so generally used have received a uniform interpretation, and it will not do to introduce confusion into commercial activities by establishing a rule which is inharmonious with the general custom of merchants throughout the trading world.

In addition to the cases cited in the *Andersen, Meyer* case, *supra*, reference may be made to the very recent case of *Smith Co. v. Marano*, 267 Pa. 107, 110 Atl. 94; *Law & Bonar v. British-American Tobacco Co.* (1916), 2 K. B. 605; *C. Sharpe & Co. v. Nosawa & Co.* (1917), 2 K. B. 814; *Mambre Saccharine Co. v. Corn Products Co.* (1919), 1 K. B. 198; *Stroms Bruks Aktie Bolag v. Hutchison* (1905), A. C. 515.

The use of the expression in the *Collignon* case, *supra*, that the determination of when title should pass, "depends upon the intention of the parties" in a sale "c.i.f." is not supported by the authorities and is misleading, unless by it is understood that an intention contrary to that established by the use of "c.i.f." must

be unmistakably shown in the contract itself, as the courts hold that the use of the term "c.i.f." establishes the transfer at the time of delivery to the carrier, even though the contract may call for delivery at some other time. In the *Law & Bonar* case, *supra,* the English court held that a provision in the contract that for a period after shipment the goods were to be at the risk of the seller was repugnant to the "c.i.f." terms, and that although that clause appeared in the contract, it could have no application to a transaction which was also "c.i.f."

In the case of *Smith Co. v. Moscahlades,* 193 App. Div. 126, 183 N. Y. Supp. 500, which is quoted in the *Andersen, Meyer* case, the New York court held that, in a sale "c.i.f.," a statutory provision of the New York sales act that property does not pass until the goods have been delivered to the buyer or have reached the place agreed upon was, "unless a different intention appears," inapplicable, for a "c.i.f." contract imports an intention differing from that set out in the statute, and falls within the exception.

In the case of *Smith Co. v. Marano, supra,* the defendant agreed to buy merchandise from the plaintiff at a price "c.i.f." and the goods were destroyed by submarine while in transit on the high seas. The defendant was held liable for the purchase price, as delivery to the carrier was delivery to the defendant. In that case no particular emphasis was placed on the delivery of the shipping documents, it appearing they were actually tendered to defendant with sight draft for the amount due.

In *Smith Co. v. Moscahlades,* above, it was further held that a delivery to the carrier of goods bought "c.i.f." was an unconditional appropriation and the title passed to the buyer, even though the purchase price was payable before the buyer was entitled to the

actual delivery of the goods, or the delivery of the bill of lading, which in that case was made to the order of the seller and endorsed by it to the buyer.

In the case of *Mambre Saccharine Co. v. Corn Products Co., supra,* it was held that the seller could effectively tender the proper documents to the purchaser and claim delivery, although he knows at the time of the tender the goods have been lost in transit.

Delivery of the shipping documents and the insurance policies, in order to complete the transaction, need not be made until a reasonable time has elapsed. In this case documents which entitled the appellant to physical possession of the property, though other than the bill of lading, were delivered to the appellant, and it is in no position to complain that the bill of lading was not delivered.

Some point is made of the fact that shipment from Calcutta was not made to the appellant as consignee, and that the respondent was not the owner of the goods sold to the appellant. We see no merit in this position, for it is a common commercial transaction for merchants to make purchases and re-sell the goods to their customers without first getting actual physical possession of the goods themselves, and that is what was done in this case; the goods were distinctively marked and set aside to the appellant, and although they may have been consigned to the account of the respondent, nevertheless were so segregated and distinguished as to have been appropriated to the appellant's contract. The bill of lading which was made out to the respondent was, immediately upon its receipt, endorsed and attached to the draft, and, as was said in the *Marano* case, *supra,* this merely indicated "appellee's intention to retain property in the goods to secure performance by the defendant of his promise to pay for them, and did not, by the express words of

the sales act, relieve him from the risk that was upon him from the time the goods were delivered to the carrier." The title was transferred from Becker, Grey & Company to respondent and from respondent to appellant at the time the goods were placed on board the "Fuca Maru" for transportation, although the appellant was not entitled to the physical possession of the property until it had received the documents and complied with the terms of the contract. As the trial court said in a memorandum opinion, "there was no hint or reservation that the title would pass upon payment of the draft or subsequent approval of the plaintiff."

The judgment is affirmed.

PARKER, C. J., BRIDGES, and HOLCOMB, JJ., concur.

## ON REHEARING.

### [En Banc. February 6, 1922.]

PER CURIAM.—This cause was reargued before the court En Banc on January 23, 1922. Deeming ourselves fully advised in the premises, and a majority of the judges being of the opinion that the cause was correctly disposed of by the decision of Department One, the judgment is affirmed for the reasons therein stated and as therein directed.