[No. 15521.    Department Two.    January 13, 1920.]

## JOSEPH SUSSMAN, *as Tacoma Junk Company, Appellant,* v. SAM GUSTAV, *as Pacific Junk Company, Respondent.*[1]

SALES (33)—CONSTRUCTION—TRANSPORTATION—PROCURING CARS. The purchaser of junk to be delivered f. o. b. Seattle is under no obligation to furnish the cars, even if he later offered to assist in obtaining them.

SAME (67)—DELIVERY—DEMAND. Upon a sale of junk f. o. b. Seattle, the seller is bound to load the cars within a reasonable time, without any demand by the buyer.

SAME (36)—TIME OF PAYMENT—TENDER. Upon a sale of junk f. o. b. cars, delivery and payment are simultaneous acts, and the buyer need not tender or pay the price before the cars are loaded.

SAME (151) — ACTIONS (29) — DEFENSES — PREMATURE ACTION. An action for breach of a contract to sell and deliver junk f. o. b. cars, commenced ten days after tender of the price, is not premature, where the seller, after long delays, still refused to fix any time for delivery.

SALES (9, 28)—OPTION. An option to purchase, once accepted, becomes a binding contract.

SALES (151)—ACTIONS—DEFENSES—TENDER. A buyer of junk, having waited a year for delivery, is not obligated to accept a tender after bringing suit for damages.

Appeal from a judgment of the superior court for King county, Smith, J., entered March 19, 1919, upon granting a nonsuit, dismissing an action on contract. Reversed.

*Blackburn & Gielens* and *Jones, Riddell & Brackett,* for appellant.

*Jay C. Allen,* for respondent.

BRIDGES, J.—Suit by appellant to recover damages of respondent for breach of a contract to deliver scrap iron. The appellant has his place of business in

[1] Reported in 186 Pac. 882.

Tacoma, and the respondent does business in the city of Seattle. Each was engaged in the scrap iron business. On November 8, 1916, the respondent gave a written option to the appellant as follows:

"Nov. 8, 1916.

"We, the undersigned, hereby grant an option to Mr. Joe Sussman of the Tacoma Junk Co. on 100 tons of scrap wrought iron at $11.50 per net ton, f. o. b. cars, Seattle, said option holds good for two days from date.          (Signed) Pacific Junk Co.,
"Per I. Gustav."

Two days thereafter, on November 10, 1916, appellant accepted the option in the following words:

"Nov. 10, 1916.

"Mr. I. Gustav,

"Accept your option one hundred tons scrap iron eleven fifty ton.          (Signed) Tacoma Junk Co."

On November 11, the respondent wrote appellant acknowledging receipt of the acceptance of the option and asked that a check for $500 be sent to apply on the purchase price, and thereafter, on November 14, the appellant sent this sum of money to respondent. At the close of the plaintiff's testimony, the motion of defendant for nonsuit was granted, and a judgment dismissing the action entered.

The testimony shows the following: Respondent was to deliver the scrap iron to appellant, f. o. b. cars at Seattle, shortly after January 1, 1917. Several times during January and February, 1917, and at other times during that year, the appellant made demands of respondent for shipment. In each instance the respondent excused himself from delivering by saying that he was unable to get cars for the shipment. At some of these conversations the appellant stated that, if respondent would notify him when he was ready to load, he, the appellant, would come to Seattle and

assist in procuring cars, but respondent never notified appellant that he was ready to load and wanted cars for that purpose. Finally, on October 15, 1917, one Keisler, representing the appellant, went to Seattle and saw the respondent and demanded the delivery of the iron, but the only satisfaction he got from respondent was that he was unable to procure cars. On November 8, 1917, Mr. Gielens, appellant's attorney, went to Seattle to demand delivery and to pay the balance of the purchase price. He made a proper tender of the balance of the purchase price, which tender, however, was refused. At the same time, Mr. Gielens tried to get a promise from respondent as to when he would load the iron, but respondent again complained that he was unable to get cars, and he would not agree to load the cars within a week or ten days or a month; in fact, he refused to fix any time within which he would make delivery. About ten days after this last conversation, this suit was brought.

Respondent contends that he was under no obligation to load until the appellant had furnished him with cars. There was no obligation resting upon appellant to furnish cars. The contract provided that respondent was to deliver the iron f. o. b. cars at Seattle.

This court, in the case of *Menz Lumber Co. v. McNeeley & Co.*, 58 Wash. 223, 108 Pac. 621, 28 L. R. A. (N. S.) 1007, held that, under a contract of this character, it was the duty of the respondent to furnish the cars and load them at his own expense. The terms of the original contract were not altered by the oral agreement of the appellant to assist respondent in procuring cars.

Respondent contends that, inasmuch as the contract did not provide for the time of delivery, he could not be placed in default until the appellant had made demand for delivery. Under the terms of the contract,

it was the duty of the respondent to load the iron within a reasonable time, and there was no duty devolving upon the appellant to demand the loading of the iron or its delivery. But even if such demand were necessary, as heretofore pointed out, the appellant made repeated demands which respondent failed to comply with.

Respondent further contends that he would not be put in default until appellant had paid him the balance of the purchase price. Under the terms of the contract, the iron was to be delivered by respondent f. o. b. cars at Seattle, and the appellant was under no obligation to either tender or pay the purchase price until respondent had so loaded the cars. In cases of this character the actual delivery and the payment of the purchase price are simultaneous. Under the terms of the contract, the loading of the cars was a necessary preliminary to the delivery, and respondent would not be in position to demand his pay until the cars had been loaded. *Engeldinger v. Stevens,* 132 Wis. 423, 112 N. W. 507; *Badger State Lum. Co. v. Jones Lumber Co.,* 140 Wis. 73, 121 N. W. 933. But if it should be admitted that respondent was entitled to his pay before the cars were loaded, the testimony shows that such payment was tendered about ten days before suit was brought.

But respondent contends, and the trial court held, that he was not given a reasonable time, after the tender and before the suit was brought, within which to secure and load the cars. It must be remembered, however, that the appellant's testimony shows that, when he tendered the balance of the purchase price some ten days before the commencement of the action, respondent still refused to fix any time for delivery, or to make any positive agreement with reference thereto; consequently the appellant had a perfect

right to assume that respondent did not intend to deliver the iron, or, at best, would deliver it at his own convenience. We have no doubt that, under the facts of this case, the appellant did not prematurely bring his suit.

The respondent seems to be under the impression that the writing sued upon was nothing but an option, and the trial court seems to have been of a like opinion. An option once accepted becomes a binding contract upon the parties thereto. *Ranahan v. Gibbons*, 23 Wash. 255, 62 Pac. 773; *Caldwell Bros. & Co. v. Coast Coal Co.*, 58 Wash. 461, 108 Pac. 1075.

Almost immediately after the suit was brought, the respondent offered to make delivery, which delivery was refused by the appellant. It is contended that appellant cannot maintain this action because he refused to accept delivery after the suit was brought. The appellant, having waited a year for the delivery of this iron, and having brought his suit for damages, as he was entitled to do, was under no obligation to accept the belated offer of delivery. The court was in error in granting the nonsuit.

The cause is remanded with instructions to set aside the judgment of nonsuit and dismissal and proceed to the hearing of the case in accordance herewith.

HOLCOMB, C. J., MITCHELL, MOUNT, and FULLERTON, JJ., concur.