[No. 20186. Department Two. March 3, 1927.]

YOURS TRULY BISCUIT COMPANY, *Appellant,* v. CHAS. H. LILLY COMPANY, *Respondent.*[1]

[1] SALES (49, 81)—RESCISSION BY SELLER—ESTOPPEL OR WAIVER—PARTIAL ACCEPTANCE AND DELIVERY. The seller's right to cancel the contract for failure to accept delivery at the time agreed upon, without giving the buyer a reasonable notice to comply with the agreement, is waived, where there was a sale in January of two thousand barrels of flour, to be delivered "as wanted by April 1," upon which only two hundred and forty barrels were delivered before April 1, and deliveries were thereafter continued as wanted until August 25, when about one-third of the order had been received.

Appeal from a judgment of the superior court for King county, Hall, J., entered May 22, 1926, upon findings in favor of the defendant, in an action on contract, tried to the court.   Reversed.

¹Reported in 253 Pac. 817.

17—142 WASH.

*Roberts & Skeel* and *Elwood Hutcheson,* for appellant.

*Jay C. Allen* (*John F. Walthew,* of counsel), for respondent.

Askren, J.—The plaintiff corporation placed its order with the defendant corporation on January 28, 1924, for two thousand barrels of flour, at a specified price, to be delivered "as wanted by April 1, 1924."

The order was accepted, and thereafter, prior to April 1, delivery was taken under the contract of two hundred and forty barrels. After the expiration of the time provided for in the contract, the plaintiff continued to order, and the defendant to deliver under the contract, additional flour up until August 25, 1924, at which time a total of six hundred fifty-four barrels had been delivered. On September 8, the plaintiff ordered additional flour under the contract, and was advised that the contract had been cancelled for failure to accept delivery within the time provided in the contract. The plaintiff refused to recognize the cancellation of the contract, and made demand for the balance of the flour under it, to wit: one thousand two hundred thirty-five barrels, which was refused. The plaintiff then brought suit for damages, claiming the difference between the contract price and the market price at the time of the cancellation. The complaint alleged a subsequent oral agreement prior to the expiration of the contract whereby the time for delivery was extended to the end of the year. This was denied by respondent.

At the trial, the evidence disclosed that the defendant left the question of future deliveries of flour under the contract to its salesman who took the order. He was the only point of contact between the parties, and from time to time the defendant's officers insisted that he endeavor to secure the closing up of the contract by

getting plaintiff to accept delivery of the flour. The evidence showed, however, that his requests of plaintiff never amounted to anything more than an expression of a desire that the plaintiff should take more of the flour. It was also shown by testimony that the time for delivery had been extended to the end of the year.

The trial court refused to find that the salesman had authority to extend the time, or that such an agreement had been ratified by defendant; and, although finding that flour was delivered under the contract, held that the failure to accept delivery of all of it before April 1 terminated the contract.

The plaintiff has appealed and has assigned error of the court in (1) failing to find that the contract was extended by agreement with the salesman; (2) that such an agreement, if beyond the salesman's authority, was ratified by respondent; and (3) that the provision of the contract placing April 1 as the time for delivery, was waived.

[1] Since the third ground is decisive of the rights of the parties, and we are disposed to hold that the assignment is well taken, we shall discuss only that question.

There is no dispute in the record that all deliveries of flour after April 1, were made under the contract, for each invoice bears upon its face a statement so showing. Now, where a contract has a provision fixing a time for performance, and the party who has the right to enforce the provision fails to do so, but continues the contract past the date of expiration by accepting and filling orders thereunder, can such party at any time he so elects cancel *instanter* the contract?

The authorities answer this question in the negative, and the basis of the holdings seems to be that, where one by his conduct has caused the other to believe that

he has waived a provision which was placed there for his benefit and considers the contract in full force and effect, common honesty between men requires that, if he subsequently desires to enforce the provision, reasonable time must be given the other party to comply with the terms of the contract. The rule is tersely stated in 24 R. C. L. 284, as follows:

"Though the right of one party to terminate the contract for a default of the other party is recognized, still he has the right to treat the contract as continuing, the right to terminate being given for his benefit; and it seems to be generally recognized that if he wishes to exercise this right he must give seasonable notice of his election to do so to the party in default, else he will be deemed to have waived his right of termination on account of such past breaches."

Our own decisions are in harmony with this view. *McGuire v. Morford,* 113 Wash. 540, 194 Pac. 783; *Bodin v. Wilcox,* 129 Wash. 208, 224 Pac. 558; *Whiting v. Doughton,* 31 Wash. 327, 71 Pac. 1026; *Anderson, Meyer & Co. v. Northwest Trading Co.,* 115 Wash. 37, 196 Pac. 630; *Gile v. Tsutakawa,* 109 Wash. 366, 187 Pac. 323; *Cunningham v. Long,* 134 Wash. 433, 235 Pac. 964.

Respondent has sought to differentiate many of our cases upon the theory that, since they involved cancellations of contracts for the sale of property, the result thereof was to work a forfeiture of the amount already paid in, and this court, abhorring such a result, required reasonable notice of intention to cancel or forfeit.

The principle is not essentially different whether applied to those contracts where forfeiture of the amount paid in results, or to those contracts where a substantial right exists in the terms of the contract itself. What difference can it make whether one loses a small sum already paid in upon a contract, or loses a

large sum through the loss of a right guaranteed in the contract?

Respondent has relied upon the case of *Sussman v. Gustav,* 109 Wash. 459, 186 Pac. 882, where one who had contracted to deliver certain scrap iron failed for more than a year to deliver, although repeated demands were made therefor, with tender of the amount due, was held liable for breaching his contract. The seller in that action urged that he should have been given reasonable time to deliver after tender and before suit was brought. This contention was disposed of as follows:

"But respondent contends, and the trial court held, that he was not given a reasonable time, after the tender and before the suit was brought, within which to secure and load the cars. It must be remembered, however, that the appellant's testimony shows that, when he tendered the balance of the purchase price some ten days before the commencement of the action, respondent still refused to fix any time for delivery, or to make any positive agreement with reference thereto; consequently the appellant had a perfect right to assume that respondent did not intend to deliver the iron, or, at best, would deliver it at his own convenience. We have no doubt that, under the facts of this case, the appellant did not prematurely bring his suit."

This case, it will be observed, is not helpful to respondent. It might be authority if the seller in that action had been making deliveries from time to time and then, without an opportunity to complete deliveries, the buyer had refused to accept because not made within a reasonable time. We held that, since the contract did not provide for the time of delivery, a reasonable time would be allowed.

Respondent also cited *Globe Brewing Co. v. American Malting Co.,* 247 Ill. 622, 93 N. E. 300, where the Illinois court, without the citation of authority, took a

different view of a situation somewhat similar to that in the present case. It is unnecessary here to attempt to distinguish that case, although it is possible that it might be done upon the lack of any stated finding in the opinion that the delivery of goods after the expiration of the contract was made under the contract. The case had previously been decided contrawise by the Illinois appellate court in conformity with our views here expressed, and that court held that orders filled after the expiration of the contract were made upon the contract. In any event, it does not state what we conceive to be the prevailing rule.

There is some conflict of authority upon the rule of law applicable, but an investigation of the reported cases, we think, clearly shows that the weight of authority coincides with the views here expressed.

A situation almost identical with the instant case was presented to the Tennessee court in *Tennessee Fertilizer Co. v. International Agriculture Corp.*, 146 Tenn. 451, 243 S. W. 81. The precise question raised here was there disposed of in the following language:

"The seller here, by its continued and consistent course of conduct in tendering acid due under the contract, requesting shipping instructions therefor, and repeated notifications to the buyer of the latter's existing obligation under the contract, had kept the same in force and binding upon both parties; the cancellation, therefore, without due notice to the buyer of such intended action and specification of a reasonable time in which the buyer might comply with the contract, constituted an actionable breach. There is no question but that the seller might have renounced the contract upon the buyer's first default, and it is equally true that by reason of subsequent acceptance of irregular or incomplete performance by the buyer its right to insist upon performance according to contract terms was not irrevocably waived, but, having treated the contract in the manner above indicated, the right to insist upon

complete performance, and the right to rescind for deviations or defaults of the buyer, could not be exercised unless and until the latter was duly informed of such intention."

To the same effect see *Wildberg Box Co. v. Darby,* 143 Tenn. 73, 223 S. W. 855; *Lowy v. Rosengrant,* 196 Ala. 337, 71 South. 439; *Schulder v. Ladew Co.,* 178 App. Div. 458, 165 N. Y. Supp. 504.

Respondent has also urged that there was never a waiver of the time for performance, since there was always objection made to the failure to take sufficient flour. But as we read the record, there was never a time when there was communicated to the appellant any demand that the balance of the flour be taken within any definite period. In fact, we think it clearly appears that the method of request was such as to cause the appellant to believe that the respondent would be satisfied if an honest attempt were made to take from time to time. It may be, as testified by respondent's officers, that they never intended to waive the time feature of the contract, and that they expressly told their salesman that the flour "must be taken out." But this was not the purport of the information given the appellant by the salesman, and since he was the agent of respondent and selected by it to impart the news, it cannot complain, as against appellant, that its own agent failed to make its views clear. The record shows clearly that, as soon as appellant had information that the respondent desired to insist upon the completion of the contract, it immediately offered to take delivery of the whole amount still due under the contract.

The judgment is reversed.

MACKINTOSH, C. J., PARKER, TOLMAN, and BRIDGES, JJ., concur.