[No. 22710. Department Two. February 26, 1931.]

W. G. BEARDSLEE, *Appellant*, v. NORTH PACIFIC FINANCE
CORPORATION, *Respondent*.[1]

*John F. Garvin*, for appellant.
*Eggerman & Rosling*, for respondent.

MILLARD, J.—An automobile was purchased by the
plaintiff on conditional sales contract. That contract
was assigned by plaintiff's vendor to the defendant,
who seized the automobile because of plaintiff's failure
to pay certain installments at maturity. Plaintiff in-

[1]Reported in 296 Pac. 155.

stituted an action to recover from the defendant the automobile, or its alleged value of one thousand dollars. A bond was furnished by the plaintiff, a writ of replevin was issued, and the sheriff took possession of the automobile. The defendant gave a redelivery bond, and the possession of the automobile was restored to the defendant, who pleaded, as an affirmative defense, that, upon failure of the plaintiff to pay the installments that matured April 7th and May 7th, 1929, it had repossessed the automobile, pursuant to the provisions of the conditional sales contract. The cause was tried to the court, which found, so far as is pertinent to this appeal, as follows:

" . . . that said contract authorized and permitted the vendor or its assigns, upon any default, to forfeit the interest of the purchaser therein and repossess the car.

"IV. That plaintiff failed to make the payments due on said contract on May 7, 1929, and June 7, 1929, and thereafter and on June 29, 1929, defendant North Pacific Finance Corporation, pursuant to the terms and conditions of said contract permitting it so to do, repossessed said automobile and forfeited said contract.

"V. That at all times mentioned in the plaintiff's complaint herein, the defendant North Pacific Finance Corporation, was the owner and entitled to the possession of said automobile."

From judgment entered dismissing the action, the plaintiff has appealed.

Appellant contends that, while the respondent may have had a right to claim a forfeiture under the terms of the contract between the parties, it voluntarily waived that right, and its seizure after that waiver was unwarranted.

The facts are as follows: On July 7th, 1928, the appellant purchased a Chrysler automobile, on conditional sales contract, from the H. J. McDonald Motor

Company, which immediately assigned the contract to the respondent. On the original purchase price of $2,086, the appellant made a cash payment of $1,150. He agreed to pay the balance of $936 in eighteen monthly installments of $52 each, commencing August 7, 1928. The conditional sales contract provides that:

"In case the vendee shall fail to make any payment at the time when the same shall become due and payable hereunder, thereupon without notice, at vendor's option, all unpaid balance on this contract shall thereafter bear interest at the rate of twelve per cent per annum, and any judgment rendered hereon shall bear interest at the rate of twelve per cent per annum. . . ."

"In case vendee shall fail to make payment of any sum to become due under this agreement at the time when and in the place where the same shall become due and payable . . . thereupon the said vendor or his assigns may at his option exercise either of the following remedies:

"(a) Take immediate possession of said property wherever found, with or without process of law, using all necessary force to do so, and thereupon all of the rights and interests of the vendee therein or thereto, . . . shall be forfeited to and become the property of the vendor, and all payments theretofore made thereon shall be held and retained by the vendor as rent for the use of said property and as liquidated damages. Election of this remedy shall operate to cancel the obligation of vendee to pay the balance due;

"(b) Declare all sums of money provided by this contract to be paid to be immediately due and payable, waive his interest in and to said property and immediately resort to an action at law for the collection of the whole of the unpaid balance hereunder, and in such case vendee agrees to pay in addition to the taxable costs such sum as the court may adjudge reasonable as an attorney's fee in such suit or action.

"Vendor or his assigns shall not be required to give any notice as to their election of either option herein,

either as a condition precedent or subsequent to the exercise of such option.

"8. It is expressly understood and agreed that no waiver, either direct or by operation of law or in equity, of strict compliance with and performance of any term or condition of this contract, or of any breach thereof on the part of the vendee, shall be held or deemed to be a waiver of any subsequent failure of strict compliance with and performance of any and every term thereof, or of any breach thereof."

A few days prior to the maturity of each installment, a white notice was sent by the respondent to the appellant, reminding him of the payment due. Shortly thereafter, if payment was not made, a pink delinquent notice would be sent to the purchaser. The installment remaining unpaid, two other notices would be sent to the purchaser, those two notices being marked, respectively, "Second" and "Final". Other than the words "Second" and "Final" the three pink notices were in the same form and read as follows:

"Past Due Notice

"North Pacific Finance Corporation.

"719 Second Avenue,

"Seattle, Washington.

"This is to remind you that an installment which was due............................in the amount of $............................ remains unpaid. It is important that payments are made promptly when due. We trust this is an oversight.

"A charge of $2.00 will be made on all past due installments."

From the beginning, the appellant was tardy in meeting the monthly installments. On September 11, 1928, appellant paid $104 on the installments due August 7th and September 7th. Appellant paid $104 October 31, 1928, on the installments due October 7th and November 7th. The installment of $52 due December 7th, 1928, was promptly paid on maturity date.

On February 19, 1929, the appellant paid $104 on installments due January 7th and February 7th. The installment of $52 due March 7th, 1929, was paid March 27th. On May 21, 1929, appellant paid $50 on installment of $52 due April 7th.

All of the foregoing payments were not credited on the balance due from appellant on the purchase price of the automobile. While the respondent did not invoke the provision of the contract requiring appellant to pay twelve per cent interest per annum on the unpaid balance by reason of his delinquency, the respondent did exact, as delinquent collection charges, two dollars of the payment of September 11, 1928; four dollars of the payment of February 19, 1929; and four dollars of the payment of May 21, 1929.

On or about June 22, 1929, respondent directed appellant's attention to the matter of overdue installments. The testimony is conflicting as to what was said by the parties to each other at that time. It is clear, however, that an extension of the time of payment was granted by respondent. Appellant testified that, on June 22nd, he informed respondent that he had a settlement pending which, if concluded, would enable him to pay, within a short time, the entire balance due on the car; that respondent agreed to extend the time of payment. One of respondent's officers testified that appellant, a short time prior to June 22nd, promised to pay all delinquent installments by Saturday, June 22nd.

On June 26th, 1929, respondent's vice-president informed the appellant, by letter, that the payment promised had not been received, and that, if the two past due installments were not paid by return mail, suit would be brought for repossession of the automobile. That letter, which appellant testified was not received by him until noon, Saturday, June 29th, when

it was delivered to him at his office by his wife, reads as follows:

"Mr. W. G. Beardslee,          June 26, 1929.
5057 Lakeside Avenue South,
Seattle, Washington.
Dear Sir:

"The payment which was promised me last Saturday on your contract with the H. J. McDonald Motor Company has not as yet been received by us. Your account has been very unsatisfactory and there are now two installments past due and if we do not receive this remittance by return mail, we will start replevin suit and repossess the car.

"We trust you will give this matter your prompt attention in order to avoid additional cost."

No action was commenced by respondent, who, about noon, Saturday, June 29, 1929, seized the automobile, which was parked on a public street of the city of Seattle, and had it towed to a garage in that vicinity. The appellant, not finding his car that afternoon where he had parked the same, assumed that the automobile had been stolen, and immediately reported the loss to the police department. On Monday, July 1, 1929, when appellant notified the respondent that his car had been stolen, he, so the respondent testified, was informed that respondent had repossessed the machine. Appellant testified that respondent, when advised by him, on July 1st, of the loss of the car, gave to him the name of the company insuring the car against theft; that, on the following day, the appellant was notified by respondent that it had repossessed the car.

Respondent's version of what subsequently occurred is at variance with the narration of appellant. Appellant testified that he offered July 1st, to pay the delinquent installments, but respondent demanded payment of the balance of the purchase price; that the balance, amounting to $495, was tendered to the respondent, and by it refused, because the appellant

would not release the respondent from all liability for the loss of valuables contained in the automobile at the time it was seized by the respondent.

The respondent's testimony is that, when it was informed by appellant July 1st that the automobile had been stolen, appellant was immediately advised that respondent had repossessed the car. The respondent offered to return the car to appellant, if he would at once pay the two past due installments. This was not done. Two weeks later, when he inquired by telephone whether that offer could still be accepted, the appellant was told that the only way he could obtain the car was to repurchase it for $495 (the balance due on the purchase price), and to release the respondent of all liability for seizing the car.

On that same day, Saturday, the brother of appellant tendered to respondent, for appellant, a check in the amount of $495, payable to respondent. The respondent telephoned the bank on which appellant had drawn the check, and learned that appellant had to his credit at that bank at that time less than one hundred dollars, whereupon respondent refused to accept the check. The trial court was of the view, as are we, that no tender was ever made by appellant to respondent of the balance of the purchase price. There is an absence from appellant's complaint of any allegation of tender.

The contract provides that a waiver of strict compliance with, and performance of, any term or condition of the contract, or of any breach thereof on the part of the vendee, shall not be held or deemed to be a waiver of any subsequent failure of strict compliance with any and every term of the contract. This provision, insists respondent, is similar to the provision in the contract in *Lundberg v. Switzer*, 146 Wash. 416, 263 Pac. 178. There the contract provided that

any extension of the time of any payment, or the acceptance of a part thereof, or the failure of the vendor to promptly enforce any other breach of the contract by the purchaser,

". . . shall not be construed as a waiver on the part of the vendor of the strict performance of all the conditions herein contained, and the vendor may, nevertheless, without notice, enforce the performance of the contract by forfeiture and termination thereof, as herein provided upon any breach by the purchaser of any of the conditions herein contained or upon failure to make prompt payment according to any extension made."

In *Lundberg v. Switzer, supra,* which respondent contends is determinative of the question in the case at bar, we said:

"If the vendor has the right, by notice, to reinstate strict performance as to subsequent payments after having waived that performance by accepting delayed payments, it would seem to follow that the parties to the contract in the first instance, if they saw fit to do so, could agree that the acceptance of delayed payments should not operate to waive strict performance as to any future payments."

True, the parties may, by express agreement, stipulate that acceptance of delayed payments shall not be considered as a waiver of strict performance as to other payments or conditions under the contract. It is likewise true that, where a contract provides for payments at stated intervals, such contract may be modified, and the time of payment extended. That modification, whether oral or written, extending or changing the time of payment, changes the terms of the contract, and, to that extent, a new contract is made by the parties. It follows that, until the expiration of the new time, an action could not be maintained on the contract. The provision that a waiver of any breach

of the contract shall not be deemed to be a waiver of any subsequent failure of strict compliance with any and every term of the contract, as well as any other term of the contract, could be modified by agreement of the parties. We did not hold otherwise in *Lundberg v. Switzer, supra.* The rule there applied is not applicable to the facts in this cause.

From the beginning, the respondent permitted payments to become delinquent, and accepted as a premium or penalty for such delinquency a collection charge of two dollars. On June 22, 1929, appellant was to pay two delinquent installments, or, on that date, respondent granted to appellant additional time in which to pay the two past due installments. The evidence is clear that, pursuant to agreement of the parties, the time of payment was extended. Respondent's letter establishes that fact. The contract was modified to that extent, it must be conceded. Until the expiration of the new time, the respondent could not maintain an action for the collection of the two past due installments. We are not now referring to future delinquent installments, or future breaches. The car was seized, it is admitted, because of the two delinquent installments, the time of payment of which had been extended. Respondent's letter so declares:

"There are now two installments past due, and if we do not receive this remittance by return mail, we will start replevin suit and repossess the car."

The time to which payment had been extended, respondent advised, had come and gone. If, threatened respondent, payment was not made by return mail, replevin suit would be commenced. As to the two past due installments, the respondent made a new contract with appellant. When the extended time under that contract expired, the appellant was entitled to reasonable notice of respondent's intention to institute pro-

ceedings for repossession of the car. "By return mail" was not reasonable notice. Further, the respondent expressly waived its right to insist upon forfeiture of the contract for failure to pay the two installments at maturity. Having waived that right, respondent could not enforce the provision as to forfeiture for failure to pay those two installments when due, until respondent had given reasonable time to the appellant to comply with the terms of the contract.

"Where one by his conduct has caused the other to believe that he has waived a provision which was placed there for his benefit and considers the contract in full force and effect, common honesty between men requires that, if he subsequently desires to enforce the provision, reasonable time must be given the other party to comply with the terms of the contract. The rule is tersely stated in 24 R. C. L., 284, as follows:

" 'Though the right of one party to terminate the contract for a default of the other party is recognized, still he has the right to treat the contract as continuing, the right to terminate being given for his benefit; and it seems to be generally recognized that if he wishes to exercise this right he must give seasonable notice of his election to do so to the party in default, else he will be deemed to have waived his right of termination on account of such past breaches.' " *Yours Truly Biscuit Co. v. Lilly Co.,* 142 Wash. 513, 253 Pac. 817.

The provision that such waiver shall not be deemed a waiver of future breaches of the contract, does not apply to the prior breach, as to which the parties made a new agreement.

The judgment is reversed, and the cause remanded with directions to the trial court to ascertain the amount due to the respondent, and to grant appellant a reasonable time in which to pay same.

MITCHELL, HOLCOMB, FULLERTON, and BEALS, JJ., concur.