[No. 29020. Department Two. July 12, 1943.]

CENTRAL INSURANCE COMPANY OF BALTIMORE, *Plaintiff,* v. LEO L. EHR *et al., Respondents,* ROSS LYNCH, INC., *Appellant,* YELLOW MANUFACTURING ACCEPTANCE CORPORATION, *Defendant.*[1]

[1]Reported in 139 P. (2d) 701.

*Cheney & Hutcheson,* for appellant.

*Velikanje & Velikanje,* for respondents.

BEALS, J.—Leo L. Ehr, January 15, 1940, purchased a motor truck from Ross Lynch, Inc., a domestic corporation. The truck was purchased by contract of conditional sale, at the price of $1,686.77, payable at the rate of one hundred dollars per month. Among other provisions, the contract contains the following:

"2. . . . No waiver or extension of any payment, term, provision, covenant or condition should be considered as a payment or waiver of any default hereunder, nor be construed as a permanent waiver thereof. The failure of the seller to insist on prompt payment of any installment when due hereunder or the acceptance of any delinquent payment shall not constitute a waiver of any subsequent default and seller shall have the right to repossess or exercise any other remedy reserved to it hereunder upon any subsequent default.

"4. The buyer shall at buyer's own cost and expense, keep said goods in first class order, repair and running condition and free from all taxes, liens, encumbrances, and charges for keep, repairs, storage, maintenance and accessories.

"5. Time is of the essence of this contract, and if the buyer shall default in any payment required by buyer to be made hereunder or in complying with any of the terms, covenants and conditions hereof, or if seller shall deem the said goods in danger of misuse . . . then in any such event, seller may declare the entire amount then remaining unpaid hereunder to be due

and immediately payable and sue therefor, or declare this contract void and through legal process or otherwise, without notice or demand, take immediate possession of said goods. Said goods when retaken may be retained by seller and all payments made by buyer may, without demand, for performance of this agreement and without notice of default to buyer, be retained by seller as liquidated damages for breach hereof, for loss in value of said goods, and as rent for the use thereof."

The contract acknowledged receipt of $525 of the purchase price, leaving a deferred balance of $1,161.77. Vendor assigned the contract to Yellow Manufacturing Acceptance Corporation, to whom the vendee for some time made payments under the contract. These payments were generally delinquent, the assignee of the contract making frequent demands upon the vendee for more prompt payments. September 23, 1940, the interested parties executed a modification of the schedule of payments, whereby the vendee was permitted to pay the balance then due in the sum of $659, at the rate of fifty dollars per month. Notwithstanding the reduction in the amount of the monthly payments, Mr. Ehr was slow in meeting his obligations, and, December 27, 1940, the holder of the vendor's interest in the contract wrote him a letter, advising him that one-half of the October installment was due, together with the November and December installments, amounting in all to $125. The letter concluded with the following paragraph:

"Our records show that no further funds have been received from you, and we therefore must insist upon your prompt remittance to establish the account on a more satisfactory basis."

Early in January following, Ehr paid fifty dollars on the contract.

During the month of September, 1940, Ehr had, through Ross Lynch, Inc., as agent for Central Insurance Company, taken out a policy of insurance on the

truck, insuring the same against loss or damage by fire, the policy providing loss, if any, payable as interest may appear to insured, Ross Lynch, Inc., and Yellow Manufacturing Acceptance Corporation. January 28, 1941, the truck was damaged by fire, Ehr at this time owing $125 on account of past due installments on the contract of purchase, the total balance of the purchase price then amounting to $584.

The amount of the damage to the truck as the result of the fire was agreed upon in the sum of $552.84, that amount being equal to the cost of repairing the damage. The insurance company drew its check to cover the loss, payable to the joint order of the three persons above named as beneficiaries in the insurance policy. Mr. Ehr refused to endorse the check and deliver the same to his vendor, and, for this reason, the check was not cashed.

April 21, 1942, the insurance company filed in the superior court for Yakima county its complaint in interpleader, alleging the issuance of the policy of insurance, damage to the truck, and its acknowledgment of indebtedness in the sum of $552.84. This amount the insurance company paid into court, subject to the claims of the beneficiaries under the policy. September 2, 1941, Yellow Manufacturing Acceptance Corporation reassigned the policy to Ross Lynch, Inc., which company filed in the interpleader action its answer and cross-complaint, alleging that after the fire it had, at Mr. Ehr's request, furnished labor and material in repair of the truck, and that the proceeds of the insurance policy should be paid to it. Leo L. Ehr and Margaret E. Ehr, his wife, also answered, claiming the fund, and alleging that they had instructed Ross Lynch, Inc., not to repair the truck, and that they had stated that they wished to pay the balance due on the contract and take possession of the truck. They asked that the fund in court be paid to them and for damages in the sum of one thousand dollars.

The issues having been completed, the action was tried to the court sitting without a jury, and the court, after finding the facts concerning the purchase of the truck, the issuance of the insurance policy, the damage to the truck by fire, the payment of the insurance money into court, found that March 2, 1941, Ross Lynch, Inc., took possession of the truck at Pasco, and two days thereafter commenced to repair the same, "which work was either authorized by the defendant Ehr, or he had notice the same was being done."

The court found that, after the fire, the reasonable salvage value of the truck was $325, and that the market value of the truck after the repairs were made was $1,200; that, at the time of the fire, Ehr owed an unpaid balance of $584, of which $125 was delinquent, on account of the purchase price of the truck; that Ross Lynch, Inc., May 31, 1941, repossessed the truck, and June 21, 1941, sold the same for $995; that Ehr charged Ross Lynch, Inc., with the conversion of the truck, and demanded damages in the sum of one thousand dollars, in addition to the proceeds of the fire insurance policy.

The court found that March 18, 1941, Ehr informed Ross Lynch, Inc., that the latter should not repair the truck, offering to pay the balance due on account of the purchase price by surrendering the insurance company's check and payment of the difference, and

". . . was informed upon said date that said truck was repossessed. However, evidence showed that Ross Lynch, Inc., had at that time no intent to repossess, but repossessed without notice or demand of any kind on or about May 31, 1941."

The court then entered findings as follows:

"15. That said truck was never repossessed by the defendant, Ross Lynch, Inc., or if it was, it was wrongfully repossessed, and that the defendant, Ehr, had a right to rely on the fact that he would be given notice and, further, that an extension of time was given by

Ross Lynch, Inc., to the defendant Ehr, during the time that said truck was in a damaged condition.

"16. That the defendant Ehr was entitled not only to notice of intended forfeiture and repossession but, also, to a reasonable time in which to secure the money to take care of his investment and, therefore, the defendant Ross Lynch, Inc., was guilty of conversion of the truck in question and the company is liable to the defendant Ehr in the amount of the reasonable value of the truck at the time of the conversion and that such conversion occurred after repairs were made and the defendant Ross Lynch, Inc., is therefore entitled to an offset of the repairs made."

From the findings made, the court concluded that Ehr was entitled to judgment against Ross Lynch, Inc., for the value of the truck, after the same had been repaired, in the sum of $1,200, against which amount should be set off $1,136.84, leaving a net amount due Ehr in the sum of $63.16, and that judgment should be entered for this amount in Ehr's favor, providing in addition that the insurance fund in court, amounting to $552.84, be paid to Ehr.

From a judgment in accordance with the conclusions of law, Ross Lynch, Inc., has appealed, assigning error upon the making of several of the findings of fact and conclusions of law, and particularly upon the finding that appellant did not lawfully repossess the truck; and upon that portion of the judgment awarding to respondent the proceeds of the insurance policy. Error is also assigned upon the entry of judgment against appellant and upon the denial of appellant's motion for a new trial.

The amount which the trial court offset in appellant's favor against the value of the truck when converted by appellant, the offset amounting to $1,136.84, was made up of the following items: The unpaid balance due from respondent on account of the purchase price of the truck, in the sum of $584, and the cost of repairing the truck, paid by appellant, in the sum of $552.84.

Respondent lived at Pasco, operating the truck in question from that town as a headquarters. He owned no other truck, deriving his income from the use of the one vehicle. After the fire, the truck was stored in a garage at Pasco, where Ross Lynch, the manager of appellant, and his shop foreman examined it, their final estimate of the cost of repairing the truck having been accepted by the insurance company, and not questioned by respondent. Later, the truck was taken to Yakima, at Mr. Lynch's direction, parts necessary for the repair were ordered by appellant, and we agree with the trial court that the evidence shows that respondent either authorized appellant to repair the truck, or acquiesced in that procedure.

March 18th, appellant received a letter from respondent's counsel, stating that respondent desired to pay the balance due on the purchase price of the truck and take possession thereof, and instructing appellant not to do any work by way of repairing the truck. Mr. Lynch at once by telephone advised respondent's counsel that expensive parts necessary to repair the truck had been ordered, and that considerable repair work had already been accomplished. Later, on the same day, respondent met Mr. Lynch, whereupon the latter informed him that appellant had repossessed the truck. Admittedly, no such action had been attempted, and appellant admits that the truck was held for respondent for a considerable time thereafter, of which respondent was advised. Respondent having made no further payments, May 31st appellant, without notice to respondent, repossessed the truck, which was, of course, in its possession, and sold it June 21st following. Appellant's evidence shows that it repossessed the truck merely by making a book entry in its records.

The question presented to the trial court was whether or not in repossessing the truck appellant was acting within its rights. If the repossession was lawful, one state of facts was presented, while if appellant had

unlawfully converted the truck, respondent had rights to be determined by the court.

The trial court held that respondent was responsible for the work performed by appellant in repairing the truck, holding, however, that appellant had unlawfully repossessed the vehicle, and was liable as for conversion thereof.

It is admitted that respondent was in default under the contract of purchase, several installments having been delinquent prior to the date the truck was damaged by fire, and no installments of the purchase price having been subsequently paid.

Appellant relies upon the provision of the contract above quoted, whereby time was declared to be of the essence of the contract; and the further provision that the failure of the seller to insist on prompt payment of any installment or the acceptance of any delinquent payment should not constitute a waiver of any subsequent default. In this connection, appellant cites the case of *Great Western Inv. Co. v. Anderson*, 162 Wash. 58, 297 Pac. 1087, in which we held that a sufficient demand had been made for the payment of delinquent taxes, and that a forfeiture of the contract which covered real estate was valid. The case is not controlling here.

Appellant strongly relies upon the case of *Lundberg v. Switzer*, 146 Wash. 416, 263 Pac. 178, 59 A. L. R. 131, affirmed on rehearing, 148 Wash. 703, 268 Pac. 180. In the case cited, it appeared that a delivery truck had been purchased by one Kurz, on a contract of conditional sale, the contract containing the following provision:

" 'It is agreed that any extension of the time of any payment . . . shall not be construed as a waiver on the part of the vendor of the strict performance of all the conditions herein contained, and the vendor may, nevertheless, without notice, enforce the performance of the contract by forfeiture and termination

thereof, as herein provided upon any breach by the purchaser.'"

The vendee was continuously slow in making the payments called for by the contract. The vendee and one Switzer, becoming involved in business difficulties, asserted as against each other rival claims to the truck. Later, Kurz, being in possession of the truck, delivered it to one Pendell, the successor in interest of the vendor, in satisfaction of the balance due on the purchase price. Switzer, seeing the car on the street, and claiming the same, took possession thereof, whereupon Pendell and Lundberg replevied the car. It was held that the acceptance of payments by vendor after delinquency did not result in a waiver by the vendor of the right to claim strict performance as to future payments, because of the provision in the contract above quoted. The case was discussed and distinguished in the case of *Beardslee v. North Pacific Finance Corp.,* 161 Wash. 86, 296 Pac. 155, *infra,* and for the reasons there stated is not controlling here.

Appellant also cites the cases of *Beltinck v. Tacoma Theater Co.,* 61 Wash. 132, 111 Pac. 1045; *Alhadeff v. Van Slyke,* 176 Wash. 244, 28 P. (2d) 797; *Hall v. Nordgren,* 196 Wash. 68, 81 P. (2d) 857. The facts of each of these cases differ from those of the case at bar.

The record shows beyond question that prior to the fire frequent demands were made upon respondent, calling upon him to make the payments necessary to put the contract in good standing. It clearly appears that respondent had been frequently behind in making his payments, and, as above stated, he was granted the privilege of paying fifty dollars per month instead of the larger payment called for by the contract. It does not appear that after the truck was damaged respondent was given any notice requiring him to place the contract in good standing. Mr. Lynch positively denied that after the fire he ever told respondent that the latter need not make further payments on the pur-

chase price of the truck until the insurance settlement was made. On the other hand, respondent testified that Mr. Lynch stated to him that respondent need not make further payments until the insurance was settled.

Yellow Manufacturing Acceptance Corporation reassigned the Ehr contract to appellant, September 2, 1941. Of course, prior to the reassignment, appellant's assignee under the contract (in which doubtless appellant was still interested as guarantor) was the owner of the record title to the truck. Respondent testified that a Mr. Black, of Spokane, who represented the acceptance corporation, discussed with respondent the matter of the damage to the truck, and told respondent that, as long as the truck was under repair and was protected against further damage, it was not necessary that respondent make further payments upon the purchase price.

The trial court found that appellant extended to respondent the time within which to make the payments due upon the truck, thereby making allowance for the time that the truck was out of commission. It appears that, without the use of the truck, respondent was unable to obtain money with which to make the payments accrued and accruing on the purchase price, his business having been limited to the operation of the one vehicle. Respondent and his attorney informed appellant, March 18th, that they desired to pay the balance due on the truck, using the insurance money for that purpose, and did not wish appellant to repair the same. Appellant having already ordered material necessary to repair the truck, respondent made no further objection to appellant's doing the work, but, under all the circumstances, the trial court correctly ruled that respondent was entitled to rely upon the fact that he would receive direct and positive notice from appellant of the latter's intention to terminate the contract and repossess the truck. The trial court's

direct finding that appellant extended the time within which respondent could place the contract in good standing is not against the preponderance of the evidence, and must be sustained.

The court found that appellant repossessed the truck without right, was responsible as for conversion thereof, and liable for the reasonable value of the truck at the time of the conversion, which took place after the truck was repaired and in good condition.

■ Appellant contends that its forfeiture of the contract was lawful. The general rule is stated in 55 C. J., p. 1228, § 1223, as follows:

"If, however, the contract expressly so provides, acceptance of installments when they are past due does not waive strict performance as to future payments and the right to forfeit the contract without notice of default in future payments."

This principle is well recognized, and in proper cases should be applied. To apply this rule in the case at bar, however, would disregard the court's finding above referred to. The repairs on the truck were not completed until May 23rd, and appellant repossessed the truck May 31st, while the next installment payment date under the contract would be June 7th following. Under these circumstances, the case of *Beardslee v. North Pacific Finance Corp.*, 161 Wash. 86, 296 Pac. 155, is in point. In the case cited, it appeared that the contract of conditional sale of an automobile called for payment of an installment on the purchase price on the seventh of each month. The contract contained a nonwaiver provision. On or about June 22nd, vendor and vendee agreed that the vendee should have an extension of time on two past due installments, while on June 26th the vendor notified the vendee that the two installments had not been paid, and that the car would be repossessed if the installments were not received by return mail. June 29th the vendor repossessed the car. This court held that the parties had entered into a new

contract concerning the two past due installments, and that the vendee was entitled to reasonable notice of vendor's intention to repossess, and that demand for payment by return mail was unreasonable and afforded no lawful basis for repossession of the car.

In the case at bar, appellant gave no notice whatever of its intention to repossess. Appellant expressly admits that the truck was not repossessed March 18th, and that Mr. Lynch's statement to the effect that it was repossessed that date was made in anger resulting from respondent's objection to appellant's repairing the truck.

The case of *Beardslee v. North Pacific Finance Corp.*, *supra*, applies to the situation here presented, and we hold that the truck was not lawfully repossessed by appellant May 31st.

The trial court found that the market value of the truck, after the repairs were made, was $1,200. This finding is supported by the record, and should not be modified by this court.

In his answer to appellant's cross-complaint, respondent alleged in effect that appellant had converted the truck, and asked for damages in the sum of one thousand dollars, and that the court also award to respondent the fund in the registry of the court. In all, respondent sought a recovery in an amount exceeding $1,500. The trial court allowed respondent judgment against appellant for $1,200, offsetting against the judgment the balance which respondent owed appellant upon the contract for the purchase of the truck and the value of the repairs to the truck. The court then awarded the fund in court to respondent. In this, the trial court committed no error.

The judgment appealed from is accordingly affirmed.

SIMPSON, C. J., BLAKE, ROBINSON, and GRADY, JJ., concur.