[No. 23606. Department Two. October 17, 1932.]

J. L. DRUMHELLER et al., Respondents, v. S. M. BIRD, Appellant.[1]

[1]Reported in 15 P. (2d) 260.

*W. C. Losey,* for appellant.

*Reese H. Voorhees* and *Francis A. Garrecht,* for respondents.

HOLCOMB, J.—This is an action in equity brought by respondents to forfeit and declare cancelled an executory contract for the sale by them of property described in the contract, consisting of a mill at Davenport, Washington, and a number of warehouses, with equipment, located at different places in Lincoln county, Washington.

Appellant is an operator of flouring mills. In the contract entered into between him and respondents on January 6, 1930, respondents agreed to sell to him all of the real and personal property described in their complaint for the sum of thirty thousand dollars. It was agreed that $1,574.70 should be paid in cash, five hundred dollars on March 1, 1930, and five hundred dollars on the first day of each and every month thereafter until October 1, 1930, when all the balance was to be paid. In addition to the monthly payments, appellant agreed to pay the sum of five thousand dollars on April 1, 1930, for the purpose of meeting an installment due upon a bond issue of fifty thousand dollars, not all of which were due, but were callable at $105. Respondents were liable as guarantors upon the bonds, and it was agreed that certain sums from the payments to be made by appellant should be applied in payment of taxes, interest on the bond issue, trustee's charges, and other incidental expenses. Respondent Denson was designated to receive payments and to apply them on the interest, taxes and charges according to the terms of the contract.

Appellant was in possession of all the property, and made the monthly payment of five hundred dollars in March, but fell in arrears on the payment to be made

April 1, which payment he made on the last day of the month, at which time he paid $2,475, and on April 14 he paid three thousand dollars, all of which lacked one thousand dollars of being enough to meet the five thousand dollar payment due upon the bonds. Respondents Drumheller, Denson and Woldson then each loaned appellant $335 to make up the five thousand dollar bond payment. In May, appellant was again unable to meet the five hundred dollar monthly payment, and was in default from May 1, until September 16, 1930, at which time he paid twenty-five hundred dollars.

On September 11, 1930, appellant entered into a contract for the sale of the properties to H. J. Hess & Co., as agents for the Oriental-American Traders Corporation. On September 16, 1930, appellant paid respondents, from moneys received from H. J. Hess & Co., the sum of twenty-five hundred dollars, and on October 28, 1930, H. J. Hess & Co. paid to the credit of appellant sixty-four hundred dollars; and an extension agreement was granted by respondents, extending the date of payment of the entire balance due on the contract until December 15, 1930. All the belated payments were received by respondents and applied on the contract.

A disagreement arose between appellant and respondents as to the exact balance due on the contract, appellant claiming he was entitled to certain allowances by reason of the overcharges on insurance and damages for a certain steel tank having been blown down, totaling $1,067.15. H. J. Hess, as representative of the Oriental-American Traders Corporation, went to Spokane to take over the properties; and for the purpose of determining the exact balance due, appellant and respondents entered into a contract in writing on January 5, 1931, a copy of which, with an

account stated, is attached to the complaint of respondents, showing a balance of $18,836.66. It was therein agreed that this balance should be payable on January 7, 1931, and if not then paid, appellant would be in default. This settlement and new promise to pay was entered into without any fraud or compulsion.

On January 7, 1931, appellant was unable to make the payment agreed upon to respondents, and six days thereafter respondents caused to be prepared and mailed to appellant at Davenport, Washington, in conformity with the original contract, a notice of forfeiture, which was received by appellant on January 19, 1931. The material parts of this notice of forfeiture read:

"Mr. S. M. Bird, Davenport, Washington,

"You are hereby notified that it is our intention to declare forfeited, and that we do hereby declare forfeited and at an end, all your rights under that certain contract . . . and you are further notified if you do not within ten days from and after the receipt by you of this notice, remedy or make good such default by depositing with the American Bank of Spokane, Washington, as escrow agent, the full amount of said balance now due upon said contract, as modified by the supplementary agreement, to-wit: said sum of $18,636.66, all your rights under the said contract will be utterly forfeited and at an end, and we shall keep and retain all of the purchase price heretofore paid by you as liquidated damages."

Appellant did not make the payment as demanded and as had been agreed, and on February 5, 1931, after more than the ten days given had elapsed, this action was commenced for the purpose of cancelling all rights of appellant in and to the property, and forfeiting, as liquidated damages, all sums paid for and on behalf of appellant under the terms of his contract.

By his answer, appellant admitted the allegations in

the complaint of respondents of their ownership of the real and personal property; admitted the contract of January 6, 1930; and admitted that the contract was modified by the supplementary agreement dated January 5, 1931, whereby it was agreed that the sum of $18,636.66 was due and payable from appellant to respondents under that contract, and that such sum had not been paid or tendered by appellant.

As an affirmative defense, appellant alleged that the terms of the contract had not been complied with by respondents, in that an abstract of title was not furnished as required, and that respondents were required to first discharge the mortgage bonds, which were a lien on all the property in the sum of fifty thousand dollars, before he was obligated to make the payment due, and that the notice of forfeiture was waived by negotiations had thereafter with him. He further interposed a counterclaim against respondents, alleging damages in the sum of twenty-one thousand dollars for loss of profits because respondents unlawfully and maliciously had induced the Oriental-American Traders Corporation to breach its contract with him under the terms of which he could have made the alleged sum on a re-sale of the property.

In this original counterclaim, no allegations or demands were made for the recovery of $15,880 paid upon the contract by appellant, but at the trial of the case, by permission of the trial court, counsel for appellant orally amended the prayer of his counterclaim for the recovery of moneys paid on the contract, rather than the damages alleged.

The case was set for trial on June 12, 1931. On June 6, 1931, the attorney who had theretofore represented appellant gave statutory notice of withdrawal as his attorney; and on June 8, 1931, appellant employed his present counsel, who immediately moved

for a continuance, setting forth by affidavit the reasons upon which the motion was based. This motion was heard by the trial court on June 9, 1931, and denied, whereupon appellant was required to enter upon the trial of the case on June 12, 1931, over the objection of his counsel.

After the hearing in the trial court and on July 28, 1931, it rendered an opinion in writing, directing a decree in favor of respondents quieting the title of the property described in the complaint in them, and forfeiting unto them, as liquidated damages, all sums paid by appellant on the contract. This appeal results.

Deciding first the matter of the continuance demanded by appellant, although out of the order discussed by counsel, the affidavits in support of the motion gave as a reason for the continuance that appellant desired to take the depositions of certain witnesses in Seattle. The witnesses were not named, nor was the nature of their testimony set forth so as to determine its relevancy. Under these circumstances, it would have been an abuse of discretion for the trial court to have granted the continuance. There is therefore no merit in that contention.

Determining another matter out of the order discussed by counsel, appellant urges that the notice of forfeiture was insufficient under the contract, inasmuch as the original contract provides that, if the vendors elect to forfeit the contract, they should first, by registered letter addressed to him (appellant) at Davenport, Washington, give to him written notice of their intention to declare the contract forfeited, specifying the default claimed; and in the event that the purchaser should, within ten days from and after the receipt by him of such written notice, remedy or remove or make good such default, then and in that event the contract should not be forfeited for such default.

It is argued that, during the ten days, or warning period, the contract was not in default and that, by the terms above quoted, the first notice that was to be given to the vendee in this case was a notice of intention to declare the contract forfeited. It is then argued that the vendee was entitled to an additional ten days notice after the service of the notice heretofore recited that the contract would be utterly forfeited and at an end.

This contention cannot be sustained. The supplementary agreement of January 5, 1931, with the account stated for a precise balance due, required that it should be payable on January 7, 1931, and if not then paid appellant would be in default. It was not paid; appellant was in default, did not tender the balance agreed to be due, and was notified that the contract was forfeited and at an end, together with all rights thereunder, unless, within ten days from and after receipt of that notice, he remedied such default by payment of the amount expressly stipulated by him to be due. Under such stipulation, no further notice of default or of forfeiture was necessary. The notice complied strictly with the contract. The cases of *Beardslee v. North Pacific Finance Corporation,* 161 Wash. 86, 296 Pac. 155, and *Great Western Investment Co. v. Anderson,* 162 Wash. 58, 297 Pac. 1087, have no bearing on the question of notice herein.

The principal issue involved in this case is whether or not respondents were in a position to take advantage of the default of appellant in making payments under the original written contract and the supplemental written agreement.

On the question of furnishing the abstract as provided by the contract, the trial judge, with ample evidence to support his decision, in his memorandum opinion said:

"It was shown by the testimony that the abstract was in the possession of the Washington Trust Company, who was the trustee under the bond issue mentioned in the above excerpt from the contract. It was shown that this abstract was delivered to the attorney for Bird, who did examine it, and the abstract was afterwards returned to the Washington Trust Company and not to the American Bank of Spokane, who was the escrow agent for the parties involved in this transaction. No complaint was made by defendant of this condition of affairs until at or about the time of the commencement of this action. At the trial of the case, defendant Bird stated, in effect, that he had a buyer for the property, but one of the reasons that the transaction did not mature was because of the fact that the abstract was not in possession of the escrow agent. If Bird had, before default, insisted that the abstract be left with the escrow agent, he would have been within his rights in so doing, but having sent his lawyer to the Trust Company and having had the abstract examined and returned by the lawyer to the Trust Company, I am of the opinion that Bird has waived his right under the terms of the written agreement between the parties hereto to have the said abstract continuously in the possession of the escrow holder. The contract provides that 'the said escrow agent shall deliver the said warranty deed and bill of sale to the said purchaser.' (i. e. Bird) This abstract was not to become the property of Bird. It was to be placed with the escrow holder for the purpose of reference only."

This determination by the trial judge, being in conformity with the evidence and the contract, is manifestly correct and will not be disturbed.

Appellant urges, as a further default of respondents, that they failed to pay and discharge certain bonds which were a lien against the property included in the contract. The part of the contract relating to this feature reads:

22

"And it is further agreed that at the time the purchaser is to make final payment of the purchase price, he shall deposit the same with said escrow agent, the American Bank, and that vendors shall then make deposit and payment of the full amount of the balance then remaining unpaid and required to redeem the said mortgage bonds in full, and the said final payment on said purchase price shall not be delivered to said vendors by said escrow agent until said escrow agent shall have received a statement in writing made by the Washington Trust Company, as trustee under said bonds, securing the said mortgage bonds, stating and certifying that said mortgage bonds have been fully redeemed and said mortgage fully paid and discharged."

Appellant insists that the payment of the balance of the purchase price and the deposit of sufficient money by respondents to satisfy the bonds are mutual, concurrent and dependent conditions. On the contrary, respondents assert that they are independent conditions and stipulations.

The testimony at the trial disclosed that bonds had been issued against the property involved and were held, to a greater or less extent, by the public. It was shown that some of these bonds were not due, but were callable at $105. That condition was, as the trial judge said, evidently within the contemplation of the parties to the contract at the time it was made. The trial judge also aptly said that the particular phrase upon which the question turns as to whether the conditions are mutual or independent, is that which provides that, at the time the purchaser is to make final payment, he shall deposit the money with the American bank, "and that the vendors shall then make deposit and payment of the full amount" due upon the bonds. The trial judge sensibly said that the word "then" was not to be construed as meaning "concurrently" or "immediately," but should be construed

to mean "soon afterward" or "within a reasonable time." With this conclusion, we concur.

Under the terms of the written contract before us, the money to be paid by appellant was not to be paid directly to respondents, but to the escrow holder, the American Bank. This the trial court construed to be in the contemplation of the parties at the time the contract was drafted. The testimony also showed that the contract was drawn by an attorney acting for both respondents and appellant, and the principles of law pertaining to strict construction of contracts against the party whose language is adopted and who executes or writes the contract, do not apply.

In *Stein v. Waddell*, 37 Wash. 634, 80 Pac. 184, relied upon by appellant, the contract included a provision:

"If the party of the second part shall first make the payments and perform the covenants hereinafter mentioned, on his part to be made and performed, the said parties of the first part hereby covenant and agree to convey, by a good and sufficient warrantee deed," etc.

We there held that those conditions were mutual, concurrent, dependent, and not independent, and in the course of the opinion said:

"A court will not readily presume that a vendor intends to part with his title without receiving the purchase price, or that the purchaser intends to part with his purchase money without receiving a deed."

In accord with the logic of that decision, in the instant case it would not be reasonable to presume, under the terms of the written contract herein, that, when the money to be paid by appellant to the American Bank as escrow holder and not directly to respondents had not been paid, respondents should call the outstanding bonds at a premium.

Under the terms of the contract and the evidence in this case, it is manifest that there is a wide distinction between the *Stein* case, *supra,* and also the cases of *Underwood v. Tew,* 7 Wash. 297, 34 Pac. 1100; *Reese v. Westfield,* 56 Wash. 415, 105 Pac. 837, 28 L. R. A. (N. S.) 956; *Croup v. Humboldt Quartz & Placer Mining Co.,* 87 Wash. 248, 151 Pac. 493; *Finch v. Sprague,* 117 Wash. 650, 202 Pac. 257; *Frank v. Thomas Co.,* 133 Wash. 243, 233 Pac. 626; *Carter v. Miller,* 155 Wash. 14, 283 Pac. 470.

There was no substantial evidence of any conspiracy between respondents and appellant's purchasers, as alleged.

In fact, we can see no valid support for any defense or contention made by appellant. This case seems to· be governed by our decisions in *Drown v. Ingels,* 3 Wash. 424, 28 Pac. 759; *Reddish v. Smith,* 10 Wash. 178, 38 Pac. 1003, 45 Am. St. 781; *Sleeper v. Bragdon,* 45 Wash. 562, 88 Pac. 1036; *Thiel v. Miller,* 122 Wash. 52, 209 Pac. 1081, 26 A. L. R. 523; *Sisson v. Durrant,* 152 Wash. 382, 278 Pac. 174; *Lea v. Young,* 168 Wash. 496, 12 P. (2d) 601.

The last cited cases are not at variance with the cases cited and relied upon by appellant.

The decree is right, and is affirmed.

TOLMAN, C. J., MAIN, BEALS, and MILLARD, JJ., concur.