[No. 24217.   Department One.   May 25, 1934.]

W. R. GRANSTON et al., *Respondents*, v. EMIL BOILEAU
et al., *Appellants.*[1]

*W. C. Hinman,* for appellants.
*Allen, Froude & Hilen,* for respondents.

MITCHELL, J.—In December, 1928, Gardner J.
Gwinn, Inc., a corporation, as vendor, entered into a
written real estate contract by which it agreed to sell
to Emil Boileau and his wife, who agreed to purchase,
the south twenty (20) feet of lot five (5) and all of
lot six (6), block ten (10), Supplemental Plat of Frank
Pontius Addition to Seattle, Washington, together
with improvements and appurtenances.   The pur-
chasers paid part cash at the time of the contract,
and there was an outstanding mortgage against the
property of sixty thousand dollars, which the pur-
chasers agreed to pay with interest; and they also
agreed to pay on the balance of the purchase price
$31,000, $450 and interest on the fifteenth day of each

[1]Reported in 33 P. (2d) 96.

month; and further promised to pay all taxes and assessments against the property prior to delinquency, and to keep the property properly covered by fire insurance. The contract further provided:

"Time is of the essence of this contract, and in case the purchaser shall fail to make any payment of the said purchase price, promptly at the time the same shall fall due as hereinbefore specified, or promptly to perform any covenant or agreement aforesaid, the seller may elect to cancel this contract and upon such election being made all rights of the purchaser hereunder shall cease and determine, and any payments theretofore made hereunder by the purchaser shall be retained by the seller in liquidation of all damages sustained by reason of such failure, and no waiver by the seller of any default on the part of the purchaser shall be construed as a waiver of any subsequent default."

On February 6, 1929, the owner, for a valuable consideration, conveyed the property to W. R. Granston and F. O. Granston, the deed being duly recorded, and at the same time, for a valuable consideration, it, in writing, assigned to W. R. Granston and F. O. Granston all of its rights as vendor under the real estate contract, the written assignment being duly recorded. Thereafter, the purchasers made certain payments under the contract from time to time, with defaults occurring in certain particulars in 1930, after which defaults, notwithstanding some belated payments, further delinquencies and defaults occurred and increased during the year 1931, including taxes and insurance, over-due payments on the outstanding mortgage, and also defaults on the monthly installments due on the purchase price of the property according to the terms of the real estate contract.

Along through the summer of 1931, the then owners

notified the purchasers that, unless the delinquencies and defaults were met and future payments kept up, the contract would be declared forfeited. Defaults continued to increase, and, as alleged in the complaint, about the first of September, 1931, the purchasers were notified that, unless delinquencies were paid by September 25th, the contract would be declared forfeited. The record does not show that the purchasers asked for further time or contended that the time limited was in any way unreasonable, but, on the contrary, the testimony of more than one witness, disputed by the purchasers, shows that, on September 25th, the purchasers notified the owners of the property, assignees of the real estate contract:

"I am not going to do anything. I am not going to pay you, and I am not going to get out."

Thereupon, September 28, 1931, the purchasers were served with written notice of forfeiture and cancellation of the real estate contract, and a demand was made for possession of the property, which demand being refused, this action was instituted by the Granstons against Boileau and wife to quiet title in and to the property, for the appointment of a receiver during the pendency of the action to collect the rents and preserve and protect the property from waste, and for all other further and proper relief. A receiver was appointed, who has since had possession of the property.

The defendants answered the complaint, and, upon the settling of the issues, the case was tried, whereupon the court entered, among others, the following findings of fact:

"(3) That the defendants herein failed and neglected to fully comply with the provisions of said real estate contract, in that they failed to make the payment of $450 due April 15, 1931, failed to make

the payment of $400 of the $450 due July 15, 1931, failed to make the payment of $450 due August 15, 1931, and failed to make the payment of $450 due September 15, 1931; failed to pay the installments of mortgage interest, as provided in said contract, in the sum of $350 each for the months of July, August and September; failed to pay the taxes on said property for the year 1930, one-half of which became delinquent June 1, 1931, which delinquency amounted to $1170.84; and have failed and neglected to pay the fire insurance premiums upon said premises in accordance with their contract of purchase, in the sum of $242.

"(4) That because the said defendants failed and neglected to make said payments, pursuant to notice from the plaintiffs that the contract would be cancelled and forfeited if said payments were not made, and because said defendants notified the plaintiffs that they would not make any further payments on said contract, said plaintiffs on or about September 28, 1931, pursuant to the provisions of said real estate contract, notified said defendants that said real estate contract had been cancelled and forfeited and all of the rights of the defendants therein terminated, and demanding possession of said premises from said defendants; that said defendants refused to give possession to plaintiffs, although all of their right, title and interest in said contract had been cancelled and forfeited in the manner provided in said real estate contract and in the manner provided by law.

"(5) That a receiver was heretofore appointed herein by this court for the purpose of preserving the property situated upon the real estate above described and which said receiver is still in possession of said property and is conducting the apartment house thereon under order of court herein."

As a matter of law, the court concluded:

"That the defendants have no right, title or interest of any kind whatsoever in and to the premises described in the foregoing Findings of Fact, and that plaintiffs are entitled to a decree quieting their title to said premises as against any and all claims of the

defendants, together with plaintiffs costs and disbursements herein.''

A judgment according to the findings and conclusions was entered in favor of the plaintiffs. The defendants have appealed.

In the first assignment, it is claimed that the matters set forth in finding of fact No. 3, above quoted, were not in issue, and that the finding is contrary to the law and evidence. Paragraph 4 of the amended complaint, on which the case was tried, alleged defaults substantially as found by the court in finding of fact No. 3. The allegations in that paragraph of the complaint were denied by the appellants in paragraph 4 of their answer, thus presenting the issue. The finding deals only with questions of fact,—defaults and delinquencies on the part of appellants with respect to the real estate contract—and is supported by a preponderance of the evidence.

Next, it is assigned that the court erred in making finding of fact No. 4, ''for the reason that the same is contrary to the law and the evidence.'' That finding deals with facts which, in our opinion, were established by a fair preponderance of the evidence.

Next, it is assigned that the court erred in making finding of fact No. 5, ''for the reason that the same is contrary to law and evidence.'' The finding speaks of the appointment of a receiver for taking care of the property. There appears to be no doubt about the fact that a receiver was appointed, as stated in the finding of fact. Indeed, in the brief on behalf of the appellants, in stating the case under consideration, it is said: ''The receiver was appointed on October 8 under the complaint.''

The next question arises upon the assignment that the court erred in its conclusions of law because ''contrary to the law and the evidence and is not supported

by the findings of fact." We are satisfied, however, that the facts found by the court, and as they actually existed in the record, do support the conclusions of law.

■ Appellants invoke the equitable doctrine that, after waiver of the time provision in an executory contract of the kind in this action, a reasonable time must be given for performance before forfeiture. They call attention to *Cameron v. Purbaugh,* 130 Wash. 440, 227 Pac. 858, and cases therein cited. The rule relied on is correct. Indulgences, however, do not abrogate the terms of the contract, but impose upon the one granting indulgences, if he would thereafter put the other in default or claim a forfeiture, the necessity of first giving notice of intention to do so with a reasonable time within which such other party may perform.

Appellants' contention, as we understand, admits this, but they deny that proof on behalf of the respondents brings respondents within the rule. But the facts are against the appellants, as the trial court found and as a fair preponderance of the evidence shows. Upon notice that defaults and delinquencies must be met on or before September 25th, else forfeiture would be declared, according to the terms of the contract, the appellants not only did not ask for further time or claim unreasonable time for meeting defaults and delinquencies, but insisted that they were not going to do anything about the matter, would not pay, and would not get out. Clearly, the declaration of forfeiture, under the facts and circumstances, was justified, according to the terms of the contract and under the law.

Affirmed.

BEALS, C. J., MAIN, STEINERT, and MILLARD, JJ., concur.