In re GUNNING et ux.

No. B–8075.

District Court, E. D. Washington, N. D.
April 18, 1941.

Subsequent Opinion June 19, 1941.

See 39 F.Supp. 706.

Lawrence H. Brown, of Spokane, Wash., for farm debtors.

John T. Raftis, of Colville, Wash., and Robertson & Smith, of Spokane, Wash., for petitioning creditor.

SCHWELLENBACH, District Judge.

Petitioner asks that an order be entered expunging from the record as an asset of debtors' estate certain real property, situated in Township 32 North, Range 40, E. W. M. in Stevens County, Washington, together with all of the personal property listed in the debtors' inventory. This personal property consists of farm machinery, equipment and certain livestock.

On September 29, 1938, the petitioner entered into an agreement of sale with the debtors by which he agreed to sell the property involved in this petition to the debtors for $42,000 of which $5,677.45 was paid in cash and $3,750 was taken in trade on certain property in Lincoln County, the bal-

ance to be paid by the purchasers assuming and agreeing to pay certain Farm Credit Administration mortgages in the amount of $17,932.15 and the balance of $14,590.34 which purchasers agreed to pay as follows: $2,500 from the proceeds of the sale of the 1938 crops; $1,000 from the proceeds of the sale of the 1939 crops; $1,500 on November 1, 1939; $1,500 on November 1, 1940; $3,000 on November 1, 1941; $3,045.-17 on November 1, 1942; $3,045.17 on November 1, 1943.

The purchasers agreed to keep the buildings insured. The contract gave to the purchasers the right to sell any of the livestock or machinery provided that they would substitute other livestock or machinery of equal value. The contract provided that title to the crops should remain in the vendor during the life of the contract to the amount due vendor in each year under the terms of the contract. The contract and the deed and the bill of sale were placed in escrow with the Spokane and Eastern Trust Company and the contract was neither recorded nor filed in the office of the County Auditor of Stevens County.

The forfeiture clause in the contract reads as follows: "Should the purchaser fail to make the payments or to keep and perform any of the covenants and agreements herein mentioned the same shall constitute a forfeiture of this agreement and thereupon the vendor, at his option, may declare such forfeiture by written notice to the purchaser, and at the expiration of thirty days, the terms of this agreement meanwhile not having been complied with, the vendors may enter into said premises and take possession of them, and this agreement shall be at an end and null and void and the purchaser shall forfeit to the vendors as liquidated damages all payments made hereunder and immediately surrender possession of said premises. The failure of the vendors to declare a forfeiture at any time upon violation of any of the terms of this contract by the purchaser shall be deemed only an indulgence by the vendors for the particular time and shall not be construed to be a waiver of any rights of the vendors specified herein."

As of July 24, 1940, balance due on the contract was $14,590.34. The vendees did not pay the $2,500 from the 1938 crops nor the $1,000 from the net proceeds of the 1939 crops nor the $1,500 payable on November 1, 1939. They did not pay the taxes for the year 1939 nor did they make the

payments due under the two mortgages which they assumed.

Consequently, on July 24, 1940, the petitioner herein served upon the debtors a notice which was entitled "Notice of Intention to Declare a Forfeiture of and Cancel Sale Agreement." The notifying portion of the notice reads as follows: "You are hereby notified that unless the payments now in default under the terms of the sale agreement and the contract hereinafter referred to be made on or before August 24, 1940, the undersigned legal owner of the real property described in said contract will elect to declare a forfeiture and cancel the said contract and that upon such election being made all of your rights under said contract will cease and determine and that all payments heretofore made thereunder will be retained by the undersigned in liquidation of damages sustained by reason of your default and you will forthwith be required to surrender possession of the premises in said contract described."

The notice then proceeded to recite that the contract referred to was executed by the petitioner as vendor providing for the sale to the debtors herein of real estate. There is then set forth in the notice a description of the real property. The notice does not contain any demand for possession of any personal property. The only mention of the personal property in the notice is in the last paragraph thereof. In that paragraph notice is given to the debtors that they are not to sell, encumber, remove or otherwise dispose of any of the personal property.

On August 13, 1940, the debtors herein started an action in the State Court against the petitioner by which they attempted to rescind the contract on the ground of fraud. The petitioner herein filed an answer and cross-complaint in which he attempted to effect the forfeiture of the contract. The Trial Judge rendered an oral opinion finding in favor of the petitioner herein but the entry of the judgment was postponed for thirty days in order to give the debtors herein an opportunity to sell their equity in the property. At the end of the thirty-day period it was again continued until November 25, 1940. Before that time had arrived, however, the debtors' petition under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, was filed and further proceedings in the Superior Court were stayed.

It is petitioner's contention that all right, title and interest of the debtors in and to the property involved was terminated by the notice of July 24, 1940, and that, therefore, this Court acquired no jurisdiction over such property by the filing of the debtors' petition under Section 75 of the Bankruptcy Act.

■ I think I must treat the personal property separately from the real property. This, despite the fact that much that I will say concerning the real property also applies to the personal property. The notice of July 24, 1940, clearly did not constitute even an attempt to declare an intention of forfeiture so far as the personal property was concerned. In the first paragraph of the notice, petitioner described himself as "the undersigned legal owner of the real property described in said contract." In paragraph 2 the petitioner stated: "The contract herein referred to was executed in writing * * * providing for the sale * * * of the following described real property situated in Stevens County, State of Washington, to-wit:" and then follows a description of the real property only with no effort to describe the personal property. It is true that in the last paragraph of the notice debtors were notified to refrain from selling, encumbering, removing or otherwise disposing of any of the personal property during the pendency of the notice of forfeiture. That, however, cannot be construed to be the notice of the intention to forfeit. As was pointed out by Chief Justice Rudkin in Douglas v. Hanbury, 56 Wash. 63, 104 P. 1110, 134 Am.St.Rep. 1096, the notice of intention must be "definite" and "specific." Further in point on this question is the statement in Wadham v. McVicar, 115 Wash. 503, 197 P. 616, 617, to the effect that: "Forfeitures are not favored in the law, and courts will promptly seize upon any circumstances arising out of the contract or the actions or relations of the parties in order to avoid a forfeiture."

It is true that in the case of Harris v. Seattle Land & Improvement Co., 122 Wash. 323, 211 P. 282, 214 P. 1066, it was stated no special form of notice is necessary but even in that case it was held the vendee must be fairly apprised of the intention to claim a forfeiture. On this point reference is further made to Walker v. McMurchie, 61 Wash. 489, 112 P. 500; McGuire v. Morford, 113 Wash. 540, 194 P. 783; Bodin v. Wilcox, 129 Wash. 208, 224 P. 558.

The conclusion that there was no attempt to declare forfeiture of personal property is further buttressed by the fact that in the State Court proceedings petitioner not only did not pray for possession of the personal property for himself but asked for the appointment of a receiver in order that the property might be sold to get money with which to make payments on the real estate mortgages.

Debtors' counsel has raised two other questions concerning the personal property. They are:

1. That the failure to file the memorandum of conditional sale vested title absolute in so far as subsequent creditors were concerned.

2. That the provision in the contract permitting the sale and exchange of the personalty vested title in the purchaser as to such substituted property.

I will not pass upon either of those questions now, this for the reason that both counsel have informed me of their desire for a speedy decision upon this petition. Furthermore, they involve mixed questions of fact and law. I would suggest, however, that when the Conciliation Commissioner passes upon the inventory and appraisal that he take such testimony and make such findings as will enable me to pass upon these two questions with full knowledge as to the actual facts.

That brings us to the real property involved in this estate. At the outset, petitioner cites cases holding that an executory contract of sale of realty creates no interest in the land in the vendee and no legal or equitable title thereto until the contract has been fully performed. That such is the rule in Washington cannot be doubted. Schaefer v. E. F. Gregory Co., 112 Wash. 408, 192 P. 968; Ashford v. Reese, 132 Wash. 649, 233 P. 29; Brown v. Northwestern Mutual Fire Association, 176 Wash. 693, 30 P.2d 640; First National Bank of Seattle v. Mapson, 181 Wash. 196, 42 P.2d 782. Numerous other cases could be cited on this point.

That does not mean, however, that the vendee under an executory contract of sale for the sale of realty is devoid of any interest over which this Court may acquire jurisdiction. He does have the right of possession and the right to acquire title in accordance with the terms of the contract. Oliver v. McEachran, 149 Wash. 433, 271 P. 93; Vandin v. Henry McLeary Timber

Co., 157 Wash. 635, 289 P. 1016; Culmback v. Stevens, 158 Wash. 675, 291 P. 705. It was to protect these rights that the Frazier-Lemke Act was amended in 1935 in subsection n and subsection o.

The real question, then, is whether or not the right of possession and the right to purchase in accordance with the terms of the contract did or did not exist on the date of the filing by the debtors of their petition in this Court. At this point a brief recapitulation of the facts is desirable.

1. The contract provided that "time is of the essence of this agreement." It gave to the petitioner the right to declare a forfeiture upon the failure of the purchaser to make any one of the payments or to keep or perform any one of the covenants and agreements therein contained. The only limitation upon that was the right given the purchasers to reinstate the contract by making payments then due and performing the covenants and agreements of the contract within a period of thirty days. It provided that should the purchaser fail so to do the petitioner herein might enter the premises and take possession, forfeit the payments already made and then, without further action by either party, the contract would be null and void.

2. The record discloses that from September 29, 1938 until July 24, 1940 the debtors failed to make any of the principal payments provided in the contract or any part thereof. They only paid $300 on interest. They failed to pay the 1939 taxes and they sold various items of personal property without making proper substitution therefor. The record discloses nothing to indicate that prior to July 24, 1940 the petitioner intended to exercise his right of forfeiture under the provisions of the contract.

3. After August 24, 1940, the petitioner did not take possession of the property. He brought no action of ejectment nor did he seek to quiet title. Instead, on September 5, 1940, he filed his answer in the State Court proceedings and prayed that the Court cancel the contract and declare it to be null and void and forfeit to him the payments which the debtors had previously made. Later, on October 4, 1940, after the Judge in the State Court had indicated his intention of finding for the petitioner in that action, the petitioner acquiesced in and consented to a thirty-day continuance in order that the debtors might themselves work out a sale of the property. Petitioner's Exhibit "C" reveals the following col-

loquy between the Court and the petitioner's counsel:

"Mr. Smith: Well, Your Honor, as long as you have indicated that a continuance of the case will be made, I suppose you will leave it so we can attempt to work it out in some way that is equitable.

"Mr. Raftis: Would Your Honor fix any definite time?

"The Court: Mr. Glasgow suggested sixty days. What do you say about that?

"Mr. Raftis: I was going to say thirty.

"The Court: All right, say thirty, and if there is any showing of any chance, I will simply continue it another thirty days.

"Mr. Raftis: We would not object to another thirty days if there is something in the offing. Then we will just continue the matter without any order for the present. I suppose there ought to be a stipulation that the restraining order shall be * * *."

■ The rule is that in cases of executory contracts despite the inclusion of the "time is of the essence" language and the provision that violation of any of the terms of the contract shall be deemed only an indulgence for the particular time and shall not be construed to be a waiver if the vendor has habitually or repeatedly and in such manner as to induce the vendee reasonably to believe that a forfeiture will not be enforced without warning, tolerated delay or default in payments, he cannot suddenly, and without warning, assert a forfeiture. Douglas v. Hanbury, supra; Beardslee v. North Pac. Fin. Corp., 161 Wash. 86, 296 P. 155; Wadham v. McVicar, supra; Granston v. Boileau, 177 Wash. 640, 33 P.2d 96; Knowles v. LaPure, 189 Wash. 456, 65 P. 2d 1260; Franklin v. Gilbert Ice Cream Co., 191 Wash. 269, 71 P.2d 52.

■■ This does not mean that the vendor's right of forfeiture is destroyed. It is merely delayed. The Supreme Court of Michigan described it in this langauge in the case of Zadigian v. Gard, 223 Mich. 147, 193 N.W. 783, 785: "The default becomes quiescent, and a valid forfeiture will have to await a * * * quickening of the old one, by demand for performance of the contract and reasonable opportunity afforded * * * a vendee to awaken from the repose of imagined security."

In the decisions from all courts there will be found much loose language as to whether the rule is based upon the principle of waiver or of estoppel. I see no need of becoming involved in that controversy. I think it can be simply disposed of in the language of Adams v. Smith, 208 Ala. 498, 94 So. 521, 522: "In fine, the whole course of dealing between the parties [to a land contract], prior to the date of the alleged forfeiture, was calculated to impress appellant with the idea that no forfeiture would be declared on account of delay in payments. * * * In these circumstances appellant had the right on the date in question, as for anything that had previously occurred, to treat the contract as a subsisting contract of purchase."

Probably we need look no further than the language of Chief Justice Rudkin in Douglas v. Hanbury, supra [56 Wash. 63, 104 P. 1111, 134 Am.St.Rep. 1096], when he said: "But the rule is equally well established that the right of forfeiture must be clearly and unequivocally proved, and that the right may be waived by extending the time for payment or by indulgences granted to the purchaser."

It seems to me clear that on July 24, 1940, there existed in the petitioner no immediate right of forfeiture. Petitioner himself recognized this fact in the form of his notice. Instead of exercising his option to "declare such forfeiture by written notice to the purchaser," he served upon the debtors his "notice of intention to declare a forfeiture of and cancel sale agreement." He notified the debtors that "unless the payments now in default * * * be made on or before August 24, 1940, the undersigned, * * * will elect to declare a forfeiture and cancel the said contract and that upon such election being made all of your rights under said contract will cease and determine." That was no forfeiture. That was merely the giving of a notice. It was a substantial recognition by the petitioner that he could not suddenly, without warning, declare a forfeiture or maintain that one had automatically occurred.

At the expiration of thirty days petitioner took no further action to forfeit the contract. He did not seek possession either by force or by legal means. The State Court had not restrained him from exercising his right of forfeiture. In his answer in the State Court, petitioner did not seek to quiet title as he might have done had he thought the contract had been forfeited. As Judge Beals pointed out in the case of Great Western Investment Co. v. Anderson, 162 Wash. 58, 297 P. 1087, there

is a distinction between an action to quiet title and an action seeking the cancellation of a contract.

Secondly, it must be clear that when petitioner participated in the State Court proceedings in which a thirty or sixty-day extension was agreed upon, there was no indication that the petitioner felt that the contract had been forfeited.

From the foregoing facts and authorities, I am compelled to hold that there was no forfeiture of the debtors' rights to possess and to purchase in accordance with the terms of the contract on the date that the debtors' petition in this Court was filed.

In his briefs petitioner has cited certain cases which I feel constrained to discuss:

1. John Hancock Mutual Life Insurance Co. v. Tracy, 7 Cir., 80 F.2d 9, 12. That case must be distinguished from the present one on the basis of the wording of the notice. In its opinion, the Court said: "A perusal of the notice and demand satisfies us that it was a sufficient exercise of appellant's option to retain its title to the premises and to cancel appellee's promise to pay. * * * It made a demand for immediate possession of the premises based upon the reason that appellee had failed to perform the covenants and conditions agreed upon in the contract, and it notified him that at the expiration of thirty days from his receipt of the notice it would institute an action of forcible entry and detainer under the applicable statute."

There is no similarity between that notice and the notice given in the instant case.

2. In re Weis, D.C., 10 F.Supp. 227. This case was decided prior to the 1935 amendment to the Frazier Lemke Act and is not controlling today.

3. Bastian v. Erickson, 10 Cir., 114 F.2d 338. In that case the State Court action for forfeiture and cancellation had been decided by the State Supreme Court prior to the filing in the bankruptcy proceedings. This was deemed by the Federal Circuit Court as being a determination of the action. It held that the proceedings thereafter in the lower Court on the remitter from the State Supreme Court was a mere ministerial act. That decision is not in point here.

4. Drumheller v. Bird, 170 Wash. 14, 15 P.2d 260, 261. In this case it is true that the vendor used the language, "It is our intention to declare forfeited" but they followed that statement with the language "and * * * we do hereby declare forfeited and at an end." That is a wide variance from the situation in the case at bar.

5. Petitioner also cites six Federal cases, none of which involves the question presented here. In the case of In re Day, D.C., 10 F.Supp. 229, all that was held was that the debtor was not a farmer. In re Engelbrecht, D.C., 10 F.Supp. 398, involved only an option to purchase. In re Faber, D.C., 11 F.Supp. 555, and In re Erickson, D.C., 18 F.Supp. 439, both involved the question of equity of redemption. In re Young, D.C., 12 F.Supp. 30, merely discusses the question of the August 28, 1935, amendments to subsection s of Section 75 of the Bankruptcy Act. In Union Joint Stock Land Bank v. Byerly, 310 U.S. 1, 60 S.Ct. 773, 84 L.Ed. 1041, the Supreme Court passed upon the situation which existed where a mortgage foreclosure sale had been held but not confirmed because of the pendency of a bankruptcy petition prior to the May 25, 1935 decision in the Radford case. Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106. After that decision and on August 26, 1935, the District Court dismissed the petition and terminated the bankruptcy proceedings. On August 28, 1935, the amendments to the Frazier Lemke Act became law and, despite that fact, the majority of the Supreme Court held a confirmation of the sale on September 10 and the issuance of the deed on September 11 good. There is nothing in that decision which comes anywhere near touching any question involved in this case.

Counsel has cited a number of other cases. However, they all are presented in opposition to contentions raised by the debtors in defense which I have not considered and I see no value in discussing them.

The petition of J. W. Neely is therefore denied.